223 N.J. Super. 62 (1988)
537 A.2d 1340
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
NELSON PIERSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1987.
Decided February 19, 1988.
*63 Before Judges MICHELS, SHEBELL and GAYNOR.
Steven J. Kaflowitz, Assistant Prosecutor, argued the cause for appellant (John H. Stamler, Union County Prosecutor, attorney; Steven J. Kaflowitz, of counsel and on the letter brief).
Donald T. Thelander, Assistant Deputy Public Defender, argued the cause for respondent (Alfred A. Slocum, Public Defender, attorney; Donald T. Thelander, of counsel and on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
By leave granted, the State appeals from the suppression of statements made by defendant to an investigator of the Union County Prosecutor's Arson Unit who was investigating fire damage to three motor vehicles while parked in the lot of a garden apartment complex. It is contended the trial court erred in concluding that defendant's statements were excludable *64 because of the officer's failure to have given defendant Miranda[1] warnings prior to questioning. We agree and reverse.
On September 30, 1986, at approximately 12:25 a.m., Investigator William Moylan responded to the scene of a fire involving three automobiles. After speaking to the police and fire personnel already on the scene, Moylan spoke to James Sutton, the owner of the most severely damaged car. Sutton stated he believed the incident to have been drug related and part of a problem he was having with an ex-girl friend and a male individual "that he only knew by the first name of `Nelson'." He also related that three days before the fire he had observed Nelson driving by his apartment very slowly on a motorcycle and shortly thereafter a white-colored automobile stopped in front of his apartment for a few moments while the occupants appeared to be "looking at the apartments, looking at the vehicles."
The police and fire personnel having left, Moylan also proceeded to leave. However, he remained when Sutton alerted him to the fact that this same white-colored vehicle had just entered the parking lot. The driver was observed leaving the vehicle, walking into the apartment complex and, after a few moments, returning to the car. Moylan had then positioned his vehicle so as to block the path of the white car. He identified himself as a police officer and requested identification from the driver, the defendant. After telling defendant to wait in the car, Moylan returned to his vehicle to write up the information from defendant's driver's license. He also called for a back-up unit from the local police department. Defendant then approached Moylan asking him "what was going on," and was told by Moylan that he "was conducting an investigation, that we had a fire in the complex."
Upon being asked why he was in the area, defendant explained that he had driven to the complex to visit his girl friend *65 but that she was not at home. In response to Moylan's questioning defendant told him the name of his girl friend and the location of her apartment. After telling defendant that he would have to wait a few more minutes while his story was checked out, Moylan went to the apartment designated by defendant and discovered that the named girl friend did not live there. In the meanwhile, the back-up unit had arrived. Upon being confronted with the result of Moylan's inquiries, defendant was asked for an explanation and then given the opportunity to accompany the investigator and point out the door leading to the apartment that he claimed his girl friend occupied. Prior to accompanying the officer to the apartment defendant was patted down as a precautionary measure but no weapons were found on him. When defendant and Moylan proceeded to the apartments, defendant pointed out the same apartment that Moylan had previously checked.
Upon returning to the parking lot, Moylan asked defendant if he had ever been arrested. Defendant responded that previously he had been arrested for burglary. During this conversation, one of the back-up officers was shining his flashlight into the interior of defendant's vehicle. When this was observed by defendant, he told the police they could search his car as he had "nothing to hide." Defendant opened the trunk and an examination of its contents disclosed no contraband. He was then told that it might be necessary for him to come to the prosecutor's office at a later date to be interviewed. As he prepared to leave and in response to a question from Moylan, defendant acknowledged that he owned a Suzuki motorcycle. Moylan then moved his vehicle, permitting defendant to drive away.
Defendant had been detained for approximately 30 minutes. Moylan indicated that defendant had not been under arrest as he didn't believe that at the time probable cause existed to make such an arrest. He explained that his sole purpose in detaining defendant was that, "I had a duty and obligation to at least obtain names, addresses and what the individual was at the scene for."
*66 In granting defendant's motion to suppress the statements made by defendant to Investigator Moylan at the scene, the trial judge reasoned:
Obviously, the defendant was not free to leave and no reasonable person would have believed himself free to leave under those circumstances; and, therefore, the defendant was deprived of his freedom in a significant way for a period of approximately a half hour starting at 2 a.m. So, the custody aspect triggering Miranda v. Arizona, [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] is satisfied.
The second question is was the defendant interrogated or were his statements volunteered.
Investigator Moylan testified he asked the defendant specific questions as to his name, what he was doing there, where he lived, about his girl friend, where she lived, why she didn't live there when he said she did after he checked it out by going to the apartment; if he was ever arrested, about the containers in his car, if he owned any motorcycle. So, clearly the statements of defendant were not volunteered. They were in response to very specific questions of Investigator Moylan.
* * * * * * * *
The third question, was this just a general on-the-scene questioning, which is an exception to the requirement of affording Miranda Warnings. Hardly.
* * * * * * * *
I find that Investigator Moylan did have a reasonable suspicion that a crime had been committed and that Nelson had committed it and he had a right to stop him and question him, but he was compelled once he gave his name as Nelson to read him his Miranda rights before doing any further questioning.
Therefore, all the statements made by the defendant to Investigator Moylan are inadmissible in evidence.
As noted by the trial judge, Miranda warnings are a prerequisite to custodial interrogation, which is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1612. However, Miranda is not implicated when the detention and questioning is part of an investigatory procedure rather than a custodial interrogation, United States v. Booth, 669 F.2d 1231, 1237 (9 Cir.1981); State v. Godfrey, 131 N.J. Super. 168, 175-178 (App.Div. 1974), aff'd o.b., 67 N.J. 267 (1975), or where the restriction on a defendant's freedom is not of such significance as to render him "in custody." Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d *67 714 (1977); State v. Seefeldt, 51 N.J. 472, 482 (1968); State v. Downey, 206 N.J. Super. 382, 396-397 (App.Div. 1986).
As we indicated in Godfrey, whether a person has been significantly deprived of his freedom so as to trigger Miranda requires a case-by-case approach in which the totality of the attendant circumstances must be examined. Pertinent factors include the duration of the detention, the nature and degree of the pressure applied to detain the individual, the physical surroundings of the questioning and the language used by the officer in summoning the individual. United States v. Booth, 669 F.2d at 1235; State v. Godfrey, 131 N.J. Super. at 175-177; State v. Cunningham, 153 N.J. Super. 350, 352-353 (App.Div. 1977). The reasonableness of brief on-the-scene detention for limited investigative inquiry may be tested by
[T]he seriousness of the offense, the degree of likelihood that the person detained may have witnessed or been involved in the offense, the proximity in time and space from the scene of the crime, the urgency of the occasion, the nature of the detention and its extent, the means and procedures employed by the officer, the presence of any circumstances suggesting harassment or a deliberate effort to avoid the necessity of securing a warrant  these and other factors will be relevant in balancing the need for limited on-the-scene detention and inquiry against the inconvenience and indignity to the individual detained. [Arnold v. United States, 382 F.2d 4, 7 (9 Cir.1967)]
The determinative consideration is whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would or would not be free to leave. United States v. Booth, 669 F.2d at 1235.
The totality of the circumstances surrounding defendant's restraint compels the conclusion that it constituted a constitutionally permissible investigatory detention rather than a de facto arrest. See State v. Davis, 104 N.J. 490, 497-502 (1986). Defendant's appearance at the scene of the fire at 2:00 a.m. in a automobile meeting the description of a suspicious vehicle observed by the owner of one of the fire-damaged cars clearly justified defendant's detention and questioning. Indeed, Investigator Moylan might well have been derelict in his duties had he not done so. The investigative techniques adopted by the officer were neither harassing nor intimidating. His questions *68 were limited to defendant's identification and the reason for his presence at the scene. Subsequent questioning arose as a result of the apparent misinformation given by defendant. While the detention was for more than a brief period, the extended time was due in large measure to defendant's voluntary action in checking his girl friend's purported apartment and in suggesting that the officers search his vehicle. A reasonable innocent person in such circumstances would understand that the restraint was only temporary pending the completion of the questioning.
We thus discern no unreasonableness in the inception of defendant's detention or the manner in which it was conducted. Surely, the attendant law enforcement interests warranted this limited intrusion upon defendant's freedom and the consequent investigation by the officers as to "what the individual was at the scene for." As defendant's restraint constituted a permissible investigatory detention rather than rendering him in custody, the absence of Miranda warnings did not preclude the evidentiary use of defendant's responses to the officer's questions.
The suppression order dated July 28, 1987 is therefore reversed and the case is remanded to the Superior Court, Law Division, Union County, for further proceedings.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).