STATE OF NEW JERSEY IN THE INTEREST OF
A.S., A JUVENILE.

Superior Court of New Jersey
Appellate Division

Argued June 13, 1988—Decided July 18, 1988.

Before Judges J.H. COLEMAN and STERN.

*Jane E. Hendry,* Special Deputy Attorney General and Assistant Prosecutor, argued the cause for appellant, State of New Jersey; (*John P. Goceljak,* Special Deputy Attorney General-in-Charge and Acting Passaic County Prosecutor, attorney; *Jane E. Hendry* of counsel and on the brief).

*Neil C. Batelli,* Designated Counsel, argued the cause for respondent, A.S.; (*Alfred A. Slocum,* Public Defender, attorney; *Neil C. Batelli* of counsel and on the brief).

J.H. COLEMAN, P.J.A.D.

We granted the State leave to appeal from an order suppressing evidence obtained without warnings required by *Miranda v. Arizona,* 384 *U.S.* 436, 444, 86 *S.Ct.* 1602, 1612, 16 *L.Ed.*2d 694, 707 (1966). We now reverse.

I

On March 25, 1987 at 11:24 a.m. two Paterson Police Officers, Jeffrey Sims and C. Swan, were patrolling in a squad car. A passing motorist informed the officers he observed a person fire a handgun a couple of minutes earlier and place it into the waistband of his pants. He described the person and said he was walking south on East 18th Street towards 17th Avenue. Within two minutes the police officers located the suspect standing in front of 743 East 18th Street. The suspect was identified as A.W.

The police officers approached A.W. and asked if he had a gun. A.W. replied that he did not. A pat down search of A.W. did not uncover a gun, but Officer Sims retrieved five live rounds of .32 caliber ammunition from his person. Two spent casings were also recovered from the area where A.W. was standing. A.W. told the officers he had given the gun to a friend named "Alfredo" who lived on Market Street in Pater-

son. A.W. accompanied the officers in the patrol car to Market Street to show them where his friend lived.

After the two officers and A.W. had driven one and one-half blocks from the point where A.W. was located, A.W. pointed out "Alfredo" who was walking in the vicinity of the building in which he resided. "Alfredo" was identified as A.S., the respondent herein. When the patrol car was approximately 25 feet away from A.S., he turned around and began running away from the police officers. He ran into the apartment building where he resided. Officer Sims ran into the building and apprehended A.S. on a landing between the first and second floors.

A.S. was ordered to place his hands against the wall; he was patted-down but the gun was not found. The State has conceded that at the time of this search, A.S. was under arrest even though he was not so advised. Without giving *Miranda* warnings to A.S., the officers asked him what he did with the gun and he said he did not have a gun. After Officer Sims informed A.S. that A.W. had reported he gave the gun to A.S., A.S. told the officer where the gun was located. In addition to telling the policeman the gun's location, A.S. escorted him to the gun which was located in an alleyway behind 525 Market Street. The gun was stashed behind an opening in the siding of a house which was about 50 feet down the alleyway. The gun was 6 to 12 inches from the ground. This was a residential neighborhood. When the .32 caliber handgun was retrieved, it was loaded with five rounds of ammunition. A.S. was ultimately charged with delinquency for unlawfully possessing the handgun contrary to *N.J.S.A.* 2C:39–5b.

A.S. filed a motion to suppress statements made by him and to suppress the handgun. A hearing on the motion was conducted on February 1, 1988. The judge concluded that this case did not fall within the public safety exception to *Miranda* warning requirements articulated in *New York v. Quarles,* 467 *U.S.* 649, 104 *S.Ct.* 2626, 81 *L.Ed.*2d 550 (1984). He stated:

I don't see the exigencies, the emergent aspect that is set forth in the [Quarles] case, I don't see the outright danger to public safety although ultimately the gun may have been found in a narrow alleyway in a location which may or may not have exposed that gun to the public, I'm not even concerned with that aspect of it, I'm thinking about the frame of mind of the police officers who conducted the investigation as to whether or not they were justified in not giving the juvenile defendant his Miranda warnings and I do not find from the testimony frankly that the failure to provide the Miranda Warnings was justified under the circumstances derived [sic] the course of the State's case. As pointed out the officer or officers presumably acted in good faith in the sense that they were trying to locate the gun based upon the information that was provided but the exigencies were not present as set forth in the [Quarles] case which should have prevented these officers from providing this juvenile with his Miranda Warnings. Why they didn't do that under the circumstances described I do not understand and thereafter as a result of the information provided the gun in question was located and then the question boils down to whether or not [A.S.'s] rights were violated in view of the fact that he was not afforded the Miranda Warnings and whether or not that constitutes an exception to the hear—I'm sorry the Miranda case and in reading the language in the [Quarles] case very carefully and applying those factual circumstances in the instant case I do not find that the resultant search which came about in the location of the weapon came about in a lawful manner in a sense that the juvenile's Miranda Rights were violated for the reasons that I've already expressed on the record and therefore any illegal weapon that may have been found is a result of that violation certainly would be the proper subject matter of a suppression motion and accordingly I do grant the defendant's motion to suppress for the reasons that I've expressed on the record.

An order was entered on February 17, 1988 suppressing the .32 caliber revolver seized. The oral decision and the order are silent as to whether the judge also intended to suppress the use of any statement made by A.S. In any event, the statements are also admissible at the trial. Disposition of the juvenile complaint has been stayed pending this appeal.

## II

■ When the police officers approached A.W. on the street, they were investigating the whereabouts of a handgun which had been fired a few moments earlier. A.W. told them that the gun was given to A.S. The facts which lead to A.S. formed the basis to conduct a protective search of him. They had a reasonable belief that A.S. was armed and dangerous. *Terry v. Ohio*, 392 *U.S.* 1, 30–31, 88 *S.Ct.* 1868, 1884, 20 *L.Ed.*2d 889,

911 (1968), held that where a police officer has a reasonable basis to believe that a suspect is armed and dangerous, the policeman can frisk the suspect. The Court held:

> Where nothing in the initial stages of the encounter serves to dispel his reasonable *fear for his own or others' safety*, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*See* also *State v. Thomas,* 110 *N.J.* 673 (1988).

██  *Miranda* warnings were not required before the *Terry* search because A.S. was not in custody when asked where the gun was. We reject the State's contrary concession as it is not supported by the record. The test to be applied to determine whether there has been custodial interrogation is the "objective reasonable man test" which holds that "custody exists if the action of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably lead a detainee to believe he could not leave freely." *State v. Coburn,* 221 *N.J.Super.* 586, 596 (App.Div.1987), certif. den. 110 *N.J.* 300 (1988). This determination must be based on the totality of circumstances, *State v. Thomas, supra,* especially where, as here, the suspect is not advised that he is under arrest. When A.S. was placed against the wall, it was for the sole purpose of conducting a *Terry* protective search. The limited questioning of A.S. which followed, took place at about noon on a landing in the apartment building in which he resided. A.S. was not in handcuffs during the questioning. The questioning lasted only a few minutes at most. Also, A.S. did not testify and the record otherwise does not indicate there was any coercive police activity connected with his statement indicating the location of the gun. *See Colorado v. Connelly,* 479 *U.S.* 157, 165–72, 107 *S.Ct.* 515, 521–524, 93 *L.Ed.*2d 473, 484–487 (1986).

██  Furthermore, once the police officers stopped A.S., they were permitted to engage in brief investigatory questioning based on the reasonable and articulable suspicion that he possessed the gun. *Florida v. Royer,* 460 *U.S.* 491, 497, 103

*S.Ct.* 1319, 1324–1325, 75 *L.Ed.*2d 229, 236–237 (1983); *State v. Davis,* 104 *N.J.* 490, 497 (1986); *State v. Alexander,* 191 *N.J. Super.* 573, 576 (App.Div.1983), certif. den. 96 *N.J.* 267 (1984).

The investigatory questioning of A.S. falls within the "on the scene" exception to *Miranda* warning requirements. *Miranda* states "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact finding process is not affected by our holding." *Miranda v. Arizona, supra,* 384 *U.S.* at 477, 86 *S.Ct.* at 1629, 16 *L.Ed.*2d at 725. *See* also *State v. Gosser,* 50 *N.J.* 438, 445–446 (1967), cert. den. 390 *U.S.* 1035, 88 *S.Ct.* 1434, 20 *L.Ed.*2d 295 (1968).

In addition, we are persuaded that a reversal is also required based on the *Quarles* public safety exception to *Miranda.* Even if A.S. was in custody when he was questioned and when he led the police to the gun, the concern for public safety must be paramount to adherence to the literal language of the prophylactic rules enunciated in *Miranda.* The public safety exception to *Miranda* does not depend on the subjective motivation of the police officer involved because in such circumstances, spontaneity, rather than adherence to a police manual, will dictate the course of conduct. *New York v. Quarles, supra,* 467 *U.S.* at 656, 104 *S.Ct.* at 811, 81 *L.Ed.*2d at 557. In *Quarles,* as in the present case, the police officers were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they believed the suspect possessed only moments earlier. We believe the unknown whereabouts of the gun in this case posed a serious danger to the public equal to that in *Quarles.* The limited questioning of A.S. was designed to secure the safety of the police officers and the public and A.S.'s responses pertained only to the whereabouts of the gun. *Id.* at 467 *U.S.* 659, 104 *S.Ct.* 813, 81 *L.Ed.*2d 559.

What the Supreme Court said in *Quarles* when creating a public safety exception to the *Miranda* warning requirements is worth repeating in this case:

> In such a situation, if the police are required to recite the familiar Miranda warnings before asking the whereabouts of the gun, suspects in Quarles' position might well be deterred from responding. Procedural safeguards which deter a suspect from responding were deemed acceptable in Miranda in order to protect the Fifth Amendment privilege; when the primary social cost of those added protections is the possibility of fewer convictions, the Miranda majority was willing to bear that cost. Here, had Miranda warnings deterred Quarles from responding to Officer Kraft's question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting Quarles. Officer Kraft needed *an answer to his question not simply to make his case against Quarles but to insure that further danger to the public did not result from the concealment of the gun in a public area.* [467 *U.S.* at 656, 104 *S.Ct.* at 812, 81 *L.Ed.*2d at 558; emphasis added].

The location of the gun involved here demonstrates the value of a public safety exception. The gun was in an alleyway of a residential neighborhood. It was located in a place where even a small child or someone bent on pursuing criminal conduct may have found it. Also, locating the gun was important for the protection of the investigating police officers as well as the public in general. Hence, we hold that *Miranda* warnings were not required before the limited questioning of A.S.

█ Finally, we observe that even if the statements made by A.S. must be suppressed because of the *Miranda* bright line standard requiring suppression of all statements not preceded by warnings, *Oregon v. Elstad*, 470 *U.S.* 298, 306, n. 1, 105 *S.Ct.* 1285, 1291, n. 1, 84 *L.Ed.*2d 222, 230–231, n. 1 (1985); *State v. Hartley*, 103 *N.J.* 252, 281–284 (1986), the "fruit of the poisonous tree" doctrine does not require suppression of the gun. The gun was discovered not because of a statement by A.S. but by his nontestimonial conduct of leading the police officers to the gun. There is no evidence that A.S. was coerced to make a statement or to take the police officers to the gun. Thus, the seizure of the gun involved no violation of the Fifth Amendment—only a violation of the *Miranda* prophylactic rule—which is not a constitutional violation. *State v. Hartley, supra,* 103 *N.J.* at 272–276. For this reason, there is no basis to apply the taint doctrine in this case. *See State v. Micheliche,*

220 *N.J.Super.* 532, 537–538 (App.Div.1987); *State v. Cook*, 170 *N.J.Super.* 499, 505–506 (Law Div.1979).

The order suppressing the evidence is reversed. The case is remanded to the Family Part for disposition of the complaint. At the dispositional hearing, both the gun and A.S.'s statements are to be admitted.