253 N.J. Super. 84 (1990)
600 A.2d 1248
STATE OF NEW JERSEY
v.
DEXTER HALL.
Superior Court of New Jersey, Law Division Union County.
November 28, 1990.
*87 Raymond J. Stine and Steven J. Kaflowitz for plaintiff (Edward J. Tucker, Acting Prosecutor of Union County, Attorney).
Robert Seelenfreund for defendant Dexter Hall.
WECKER, J.S.C.
I. PROCEDURAL HISTORY
Defendant's Motion to Suppress was heard on June 15, 1990. Detective Louis Panarese of the Hillside Police Department testified for the State, and defendant Dexter Hall testified on his own behalf. After hearing oral argument and reviewing the parties' briefs, this court denied defendant's motion to suppress and declined to rule on defendant's oral Miranda[1] application. The court's opinion was rendered from the bench.
This court undertook sua sponte to reconsider its decision, including the Miranda aspect. Additional written argument was submitted by each side. Upon reconsideration, the June 15 decision is vacated, the motion to suppress the "controlled dangerous substance" seized from defendant is granted and the application to suppress the use of defendant's statement is also granted. The Fifth Amendment Miranda issues are so closely intertwined with the Fourth Amendment search and seizure issues that the June 15 hearing is both necessary and sufficient to resolve all issues. Any question of notice of the Miranda application has been cured by the opportunity for additional briefing addressed specifically to the Miranda issues.

II. STATEMENT OF FACTS
A search warrant was issued for the person and apartment of Carla Foster, a co-defendant whose case was severed from defendant Dexter Hall. The warrant was based upon an affidavit establishing probable cause to believe that Carla Foster was *88 selling CDS from her apartment. The warrant was not challenged. Two controlled buys by an informant were attested to in the affidavit. The apartment was located "on the edge" of a high crime area known for illegal drug activity. It was also known that Carla Foster lived in that apartment with her teenage daughters, who were enrolled in the local high school.
Before executing the warrant, the police had observed "a few" persons enter and leave the garden apartment building within a brief period. Transcript of June 15, 1990 Motion to Suppress (hereinafter "T.") at 5/3-11. Eight police officers, some in uniform and some in plainclothes, entered the apartment to execute the warrant. They secured four persons inside, including Carla Foster. One of Foster's daughters arrived after the search began. Detective Panarese let her in and patted her down for weapons. No weapons had been found on any of the persons in the apartment. A gun was found in a bedroom by one of the officers; however, Detective Panarese learned of that only after his encounter with defendant Dexter Hall.
Hall, who was unknown to Detective Panarese, arrived during the search with another male who was known to the Detective from a previous drug "situation". When defendant and his companion saw what was happening they tried to leave, but were stopped and brought inside by the Detective. Three other males later arrived and they too were brought inside.
Detective Panarese immediately patted down the defendant and his companion. The pat-down revealed no weapons (or other contraband) on defendant's companion and he was told he could leave. As Detective Panarese was patting down the defendant, he asked the defendant if he had "anything" on him. Defendant answered that he had some, but only "for personal use." At the same time, he produced from his pocket a dollar bill containing a small amount of cocaine. He was promptly arrested for possession of CDS.

*89 III. DEFENDANT'S MIRANDA RIGHTS

A. The Statement
During Police Officer Panarese's initial pat-down of the defendant, the Officer asked defendant "Do you have anything on you?" The Officer admits and the defendant agrees that the question referred to drugs, and not weapons. The defendant answered "Yes, I do. I have some for personal use, coke for my personal use." T. 35/5-6; 9/8-11. The defendant then produced from his pants pocket a dollar bill containing white powder later found to be cocaine. Defendant admitted on cross-examination that he himself took the bill out, as the police officer had testified. T. 36/19-21; 37/4-6; 9/10-15.
It is undisputed that the defendant was not read his Miranda rights. Defendant was entitled to be read his rights if he was responding to a "custodial interrogation." See Miranda v. Arizona, supra; State v. Micheliche, 220 N.J. Super. 532, 536, 533 A.2d 41 (App.Div. 1987) (custodial interrogation found despite defendant's voluntary appearance at police headquarters). There must be both interrogation ("express questioning or its functional equivalent")[2] and custody (circumstances under which a reasonable innocent person would conclude he was not free to leave),[3] to trigger Miranda.
Whether an interrogation is "custodial" is fact sensitive. Some factors to be considered include the duration of the detention, the nature and degree of the pressure applied to detain the individual, the physical surroundings, and the language used by the police officer in posing any question to the defendant. State v. Pierson, 223 N.J. Super. 62, 67, 537 A.2d *90 1340 (App.Div. 1988). Here the officer physically controlled defendant's movements, and was frisking and asking questions at the same time. Though it was accomplished in a relatively brief encounter, not at police headquarters, there were seven other officers in the apartment and defendant had been prevented from leaving. It is significant that the question was open-ended and by definition called for an incriminating answer. Defendant did not spontaneously volunteer; the circumstances were obviously and inherently coercive. Under the totality of the circumstances, I cannot conclude that a reasonable, innocent person would have felt free to leave at the time the defendant was asked whether he had "anything." He had attempted to leave while he was still at the door to the apartment. The officer had brought him inside, and immediately began patting him down and questioning him.
Both Pierson and State in the Interest of A.S. 227 N.J. Super. 541, 548 A.2d 202 (App.Div. 1988) are distinguishable. In Pierson, the defendant was questioned initially by asking his identity and what he was doing at 2 a.m. in the parking lot of an apartment where several suspicious fires had occurred. He fit the description given by one of the victims, and the brief questioning was held to be part of an "on-the-scene" investigation rather than a custodial interrogation. In A.S. another juvenile had given the police information that A.S. had the gun they were looking for. The police had a reasonable particularized suspicion that the target of their stop was himself in possession of a dangerous weapon and may have just committed a crime with that weapon. Here, the defendant was not the target of the search warrant, was only an intended visitor to the apartment being searched. The police had no independent reason for detaining and questioning him other than his arrival on the scene. Had they stopped him at the door and asked what he was there for, that would have been a permissible investigatory detention for which Miranda warnings are not required.
*91 This was a custodial interrogation; defendant knew he was not free to leave. The Officer brought defendant and his companion inside T. 8/7-13 and only allowed the companion to leave after searching him. T. 16/20-22. Under those conditions, defendant was entitled to Miranda warnings before being asked whether he had "anything" (meaning CDS) on him. T. 13/6-12, 41/10-23. Defendant's statement admitting possession of cocaine must be suppressed.

B. The Drugs
The drugs must be suppressed because the defendant produced the cocaine in direct response to the detective's question whether he "had anything on him." T.9/7-15; T.11/14-25. Although defendant initially claimed that the Detective went into his pocket and retrieved the bill with the cocaine, T.34/9 to T.35/11, he later admitted that he gave the bill to the officer. T.36/19 to 37/5; 39/20-40/12. The officer's credibility is enhanced while the defendant's is diminished.[4] Producing the bill with cocaine was a non-verbal response to the police officer's inquiry. The Appellate Division in State v. Mason, 164 N.J. Super. 1, 4, 395 A.2d 536 (1979) held:
Had defendant made an oral admission of the fact that she possessed narcotics it would not have been admissible against her because she had not been warned of her right to remain silent.... We perceive no reason why the result should not be the same when her response was of a different nature. Nonverbal responses to questions are treated in the same way as are verbal responses.... The privilege against self-incrimination extends to all acts intended to be of a testimonial or communicative character, whether in verbal or in other form.... [citations omitted].
In Mason, the defendant was asked while she was in police custody whether she had any drugs. After first saying "I don't know," she produced a bag with drugs. She had not been given the Miranda warnings. Mason is directly on point and governs *92 the admissibility of the drugs produced by Dexter Hall. Mason also supports the suppression of defendant's statement.
Defendant argues that since the statement is inadmissible, the drugs are also inadmissible as "the fruit of the poisonous tree." That theory does not apply here. The failure to give defendant his Miranda rights violates a common law rule, and requires exclusion of the defendant's response;[5] however, it is not a violation of constitutional dimension. See Oregon v. Elstad, 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222, 232 (1985); State v. Hartley, 103 N.J. 252, 271-77, 281-84, 511 A.2d 80 (1986). See also Id. at 298, 511 A.2d 80 (J. Handler, concurring in part and dissenting in part). "Fruit" of the statement need not be excluded.

IV. THE INEVITABLE DISCOVERY RULE
The violation of defendant's Miranda rights requires suppression of the cocaine as well as the statement, unless the State proves by clear and convincing evidence that the cocaine would inevitably have been discovered by valid means. See State v. Sugar, 100 N.J. 214, 235, 240, 495 A.2d 90 (1985) ("Sugar II"), after second remand, 108 N.J. 151, 156-7, 527 A.2d 1377 (1987) ("Sugar III") (sufficient evidence that victim's body would inevitably have been discovered even without improper police eavesdropping).
The inevitable discovery rule would apply if this Court found by clear and convincing evidence that (1) proper police procedures were or would have been pursued with respect to Dexter Hall; (2) such procedures would inevitably have uncovered the CDS on the bill in his pocket; and (3) the discovery would have been wholly independent of the defendant's unwarned response *93 to the detective's question. See Sugar III, supra, 108 N.J. at 156-57, 527 A.2d 1377. For the reasons set forth in Section V. below, the State has not proved that the CDS was or inevitably would have been discovered.

V. THE RIGHT TO SEARCH DEFENDANT
If the police had the right to conduct a full search of Dexter Hall, we can assume they would have found the cocaine on the bill in his wallet. But if they had only the right to "stop and frisk" for weapons under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 or no right even to pat down the defendant for weapons, they would not have found the bill with the cocaine. The cocaine that was seized from this defendant is only admissible if it would inevitably have been discovered in the course of a permissible frisk or warrantless search.
Viewed as a warrant search, this falls someplace between Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) and Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Ybarra held that the Fourth Amendment protected a tavern customer from both a pat-down and a full search where he happened to be present while a search warrant for drugs was executed in the tavern. Without a reasonable belief that he was armed, a pat-down of defendant is unreasonable under Ybarra. No search is permissible without probable cause to believe the customer committed or was about to commit a crime.
Summers held that a warrant authorizing the search of an apartment for drugs implicitly permits police to detain the owner or occupant of the apartment during the search, while evidence is gathered to establish probable cause for his arrest. A search of the occupant incident to such arrest violates no constitutional protection.
There was no evidence that Dexter Hall lived or stayed at the apartment. Summers offers no authority to detain him. There was no evidence tending to suggest he was connected *94 with the suspected drug activity, or that he was armed. Thus, Ybarra prohibits a pat-down as well as a search.
There appears to be no case in New Jersey defining when police, executing a search warrant for drugs in an apartment, have the right to search an individual who is not described in the warrant but who arrives during the search. In State in Interest of L.Q., 236 N.J. Super. 464, 566 A.2d 223 (App.Div. 1989), the court upheld the validity of a search warrant that covered "all persons present." The supporting affidavit showed sufficient surveillance and observation of traffic at the targeted residence to establish probable cause to believe that anyone arriving was at least attempting to violate the drug laws. Id. at 472, 566 A.2d 223. The precise holding of L.Q. was that an "all persons present" warrant has the same validity as a warrant that refers to "all persons reasonably believed to be involved" with the illegal activity. The Appellate Division stressed the importance of a prior determination of probable cause to search "all persons" present. Unlike L.Q., we have no prior determination that the quantity, quality, location and timing of traffic in and out of the target apartment establishes probable cause to believe that "a person who enters the premises during the search.... is probably a supplier, subdealer or a customer." Id. at 471, 566 A.2d 223. Thus, L.Q. does not sanction the seizure of the CDS from Dexter Hall. No New Jersey decision suggests that there is authority for searching all persons who arrive at an apartment targeted by a search warrant for drugs.
In other jurisdictions it is generally accepted that where the police are executing a search warrant in a private residence and they have a reasonable suspicion that an individual who arrives on the scene may be armed and dangerous, they are entitled to detain the individual briefly, and conduct a limited pat-down for weapons. See, e.g., United States v. Clay, 640 F.2d 157, 160 (8th Cir.1981) (conviction reversed because evidence should have been suppressed):

*95 Beyond dispute, the police may take appropriate action to ensure their own protection ... in executing a search warrant. The scope of that protection, however, is balanced against the fourth amendment rights of others.
There is some question, however, whether the police are required to avoid even that level of intrusion if they can be adequately protected by lesser means, such as denying entry to the premises or telling one already there to leave. See, United States v. Clay, supra, at 162 n. 9 (8 Cir.1981).
Courts differ as to what facts constitute reasonable suspicion to warrant a Terry pat-down. Compare United States v. Barlin, 686 F.2d 81 (2d Cir.1982) (police permitted to open purse of apartment owner's girlfriend to check for weapons); State v. Miller, 142 Vt. 49, 451 A.2d 1115 (1982) (police may pat-down person who arrives during warrant search of apartment, when they recognize individual from prior assaultive behavior); and People v. Broach, 111 Mich. App. 122, 314 N.W.2d 544 (1981) (presence in apartment five minutes after a controlled buy subjects person to legitimate pat-down; with United States v. Cole, 628 F.2d 897 (5th Cir.1980) (mere presence at site of warrant search, without specific grounds to suspect danger, does not justify frisk) and State v. Grant, 361 N.W.2d 243 (N.D. 1985) (defendant who entered apartment during search should not have had purse checked for weapons without reasonable suspicion, citing Ybarra). It is generally agreed that such an individual cannot be searched for drugs merely because he happens to be on the premises that are the target of a warrant. See, e.g., State v. Broadnax, 98 Wash.2d 289, 654 P.2d 96 (1982) (en banc) (police officer admitted no fear of weapons, therefore putting hands into defendant's pocket was impermissible search for drugs); State v. Myers, 55 Or. App. 370, 637 P.2d 1360 (1981) (police admit no reasonable belief defendant was armed and dangerous; court rejects argument that drugs in apartment establish probable cause to search visitor); Johantgen v. Commonwealth, 571 S.W.2d 110 (Ky. Ct. App. 1978) (mere arrival during search does not justify search for drugs, though frisk for weapons is allowed).
*96 The case most like ours on the facts is United States v. Clay, supra. A search warrant for drugs and weapons was being executed at a residence when defendant arrived and rang the bell. A plainclothes officer answered the door and ordered defendant inside. Defendant stepped back but did not run. The officer pulled a gun and ordered defendant inside. Defendant was frisked and a gun and marijuana were found on him. His conviction was reversed because the Circuit Court found that neither the weapons found on the occupant, nor the drugs found on the premises, justified the pat-down of a visitor. 640 F.2d at 161. Relying on Terry v. Ohio, supra, and Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the Eighth Circuit held that there must be "a sufficient degree of suspicion that the party to be frisked was armed and dangerous." 640 F.2d at 159. The rationale is compelling, and is adopted by this Court.
The mere fact that Dexter Hall arrived during the search cannot support his detention, or the pat-down, much less a full search. The police should have asked defendant what he was doing at the apartment while he was outside the door. See, United States v. Clay, supra, 640 F.2d at 161. If he had given an innocent explanation (such as visiting co-defendant's high-school-age daughter) with consistent knowledge and answers and without threat or suspicion, he should have been allowed to leave. One or more of the eight police officers at the scene could have stood guard outside if danger from third parties was feared. There were no exigent circumstances to justify holding Dexter Hall.
Case law tells us that the levels of police encounters with private persons are distinct, and may escalate from the most minor to a full blown arrest and interrogation. See e.g., State v. Davis, 104 N.J. 490, 517 A.2d 859 (1986); State v. Alexander, 191 N.J. Super. 573, 468 A.2d 713 (App.Div. 1983). The distinguishing and impermissible feature of this case is that the police skipped the permissible first level  a stop and inquiry, which might have shown defendant had no connection to the *97 drug distribution going on from the apartment. They telescoped the intermediate level frisk (without having any reasonable suspicion that this defendant was armed) into a demand for an inculpatory statement. The police cannot avoid the standards that apply to each level of confrontation by rushing to the next level.
The police had no valid reason for the pat-down, nor for a search of defendant. The CDS that he had in his pocket must be suppressed both because of the Fourth Amendment violation and the Miranda violation.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297, 308 (1980), cited in State v. Ward, 240 N.J. Super. 412, 418, 573 A.2d 505 (App.Div. 1990).
[3] See, e.g. State v. Pierson, 223 N.J. Super. 62, 67, 537 A.2d 1340 (App.Div. 1988).
[4] The defendant also tried to avoid admitting that he recognized the officers as police.
[5] Miranda established an irrebuttable presumption that a statement given under police interrogations without having been advised of one's basic rights, is involuntary and therefore inadmissible. In other words, an unwarned defendant cannot be found to have effectively waived those rights.