647 A.2d 1378

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DOMINGO RIVERA, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 14, 1994—Decided October 14, 1994.

Before Judges GAULKIN, KESTIN and A.A. RODRÍGUEZ.

*Susan L. Reisner,* Public Defender, attorney for appellant (*Theodore Sliwinski,* Designated Counsel, of counsel and on the brief).

*Edward F. Borden Jr.,* Camden County Prosecutor, attorney for respondent (*Philip H. Coyle,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Defendant was convicted of possession of a CDS, possession with intent to distribute, and possession with intent to distribute within 1000 feet of a school. He was sentenced to a five-year term of imprisonment on the merged convictions with three years of parole ineligibility. DEDR and VCCB penalties of $1000 and $30 respectively were imposed, along with a $50 lab fee and a six-month suspension of driver's license.

On appeal, defendant raises the following issues:

POINT I DURING JURY SELECTION, THE PROSECUTOR IMPROPERLY STRIKED [sic] MINORITY JURORS, THEREBY VIOLATING THE DEFENDANT'S RIGHT TO A FAIR AND IMPARTIAL JURY.

POINT II THE TRIAL COURT IMPERMISSIBLY PREVENTED DEFENSE COUNSEL FROM CROSS-EXAMINING THE STATE'S WITNESS MR. GROVE GIPPLE, WITH RESPECT TO MR. GIPPLE'S PENDING CHARGES, THEREBY VIOLATING THE DEFENDANT'S RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES WHO TESTIFY AGAINST HIM.

POINT III THE TRIAL COURT JUDGE IMPERMISSIBLY ALLOWED THE ARRESTING OFFICER TO TESTIFY ON HEARSAY EVIDENCE FROM AN INFORMANT, AS TO THE DESCRIPTION OF AN ALLEGED DRUG TRAFFICKER, THEREBY REQUIRING A REVERSAL OF THE INSTANT CONVICTION.

POINT IV THE SEARCH OF DEFENDANT IN A PRIVATE RESIDENCE, WITHOUT A SEARCH WARRANT AND WITHOUT PROBABLE CAUSE WAS ILLEGAL, AND THE EVIDENCE ILLEGALLY SEIZED SHOULD HAVE BEEN SUPPRESSED.

   A. THE DEFENDANT'S FOURTH AMENDMENT RIGHT WAS VIOLATED WHEN THE POLICE SEARCHED A PRIVATE RESIDENCE WITHOUT A WARRANT.

   B. THERE WERE NO EXIGENT AND EMERGENT CIRCUMSTANCES TO JUSTIFY A WARRANTLESS SEARCH OF THE PRIVATE HOME.

   C. THE DEFENDANT'S FOURTH AMENDMENT RIGHTS WERE VIOLATED, BECAUSE HE WAS ILLEGALLY SEARCHED AFTER AN UNLAWFUL ARREST.

POINT V THE PROSECUTION PRODUCED EVIDENCE BEFORE THE JURY OF ELEVEN VIALS OF COCAINE WHICH WERE NOT RELATED TO THE INSTANT CASE, THEREBY PREJUDICING THE DEFENDANT AND DENYING HIM A FAIR TRIAL. (NOT RAISED BELOW).

Our review of the record in the light of the arguments advanced by the parties discloses that the issues raised in points I, II, III

and V are clearly without merit. *R.* 2:11–3(e)(2). The issues raised in point IV concerning the trial court's ruling on defendant's motion to suppress require detailed analysis, however.

The Camden police had responded in an unmarked patrol vehicle to an anonymous citizen's complaint that a person of a particular description was selling drugs at a specified location. As the officers arrived, they observed a juvenile matching the description at the indicated location. The individual seemed to recognize the unmarked police vehicle, whereupon he appeared to place an object in his pants pocket and began to walk away. The police officers followed in the car and approached the suspect. When one officer, Detective Busbee, identified himself and asked the individual to come to the car, the suspect ran into a nearby house, with Busbee in pursuit, tripping over an end table as he entered and falling to the floor. As Busbee approached the screen door at the entrance to the house, another individual came to the door, greeted the detective by nickname and inquired as to the purpose of the detective's presence. When Busbee responded " 'That kid that just ran in, tell him I want to see him', ... the gentleman who came to the door, opened the door, gesturing [the detective] to come in", whereupon the detective entered the house. His partner followed him a moment later.

After entering, Detective Busbee and his partner questioned the juvenile suspect who had been pursued into the house. The juvenile was unable to identify the residents of the home, or to explain why he had run from the police officers and had chosen to enter the particular residence. Noting that four other males, including defendant, were present, Busbee "became suspicious, and ... asked the others who were in the house where they lived." After determining that none of these males, including the person who had invited the police to enter, lived in the house, Busbee asked whether they were visiting and who lived there. "I couldn't get a direct or positive answer from any one of them at the time." The answers given did not ring true to Detective Busbee. On further questioning of those present, he determined that one of

the four "was watching the house for his cousin. I asked where was his cousin at. He sort of hesitated and he said Florida." The hesitating answers he was receiving to his questions aroused Busbee's suspicions.

> I realized that something wasn't right, something, you know, they were in there illegal, or possibly a burglary in progress, because nobody lived there. Nobody could give me a definite answer why they were there, and who lived there.

For these reasons, and perceiving an undefined safety need, Detective Busbee and his partner conducted a pat-down search of those present, during which Busbee felt a hard bulge in defendant's pocket. Upon reaching into the pocket, Busbee discovered twenty-five vials containing a white powdery substance later verified as a CDS. One of the other persons in the house was also found to be in possession of a CDS. Nothing incriminating was found on the person of the juvenile suspect, along the path of his flight, or around him in the home.

■ We hold that the reasons advanced for conducting the search of defendant were inadequate and, consequently, that the evidence secured as a result should have been suppressed. Accordingly, we need not decide whether the trial judge was correct in determining that the police presence in the home was valid either because the totality of the circumstances conferred probable cause to pursue the juvenile suspect, *see State v. Foreshaw*, 245 *N.J.Super.* 166, 170–76, 584 *A.*2d 832 (App.Div.1991); *cf. State v. Novembrino*, 105 *N.J.* 95, 122–29, 519 *A.*2d 820 (1987); *State v. Bruzzese*, 94 *N.J.* 210, 216–27, 463 *A.*2d 320 (1983), or because the police officers had been invited by an occupant to enter the premises, *see United States v. Matlock*, 415 *U.S.* 164, 171, 94 *S.Ct.* 988, 993, 39 *L.Ed.*2d 242, 249–50 (1974); *Schneckloth v. Bustamonte*, 412 *U.S.* 218, 93 *S.Ct.* 2041, 36 *L.Ed.*2d 854 (1973). We also need not decide whether, in the circumstances, the police interrogation of the four individuals in the house was valid. Even if the police acted properly in entering the home and questioning those present, without some objective basis for suspecting that those four individuals were up to no good, the police had no authority to search them for weapons or for any other purpose.

The vague answers to Detective Busbee's questions, without more, provided no basis for undertaking a warrantless search, even one of the *Terry* * variety.

Although the police may have probable cause in the totality of circumstances to pursue and search a fleeing suspect, the existence of the suspect and the fact of flight do not confer broad authority on the police to subject those in the vicinity to the indignity of searches because they happen to be there. *Ybarra v. Illinois,* 444 *U.S.* 85, 100 *S.Ct.* 338, 62 *L.Ed.*2d 238 (1979).

> The *Terry* case created an exception to the requirement of probable cause, an exception whose "narrow scope" this Court "has been careful to maintain." Under that doctrine a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. * * * Nothing in *Terry* can be understood to allow a generalized "cursory search for weapons" or, indeed, any search whatever for anything but weapons. The "narrow scope" of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotic search is taking place.
>
> [*Id.* at 93–94, 100 *S.Ct.* at 343, 62 *L.Ed.*2d at 247 (citing *Dunaway v. New York,* 442 *U.S.* 200, 210, 99 *S.Ct.* 2248, 2255, 60 *L.Ed.*2d 824, 834 (1979)).]

*See also State v. Hall,* 253 *N.J.Super.* 84, 93–97, 600 *A.*2d 1248 (Law Div.1990), *aff'd o.b.,* 253 *N.J.Super.* 32, 600 *A.*2d 1221 (App.Div.1991).

In the absence of pre-existing probable cause focusing on this defendant, or without some articulable apprehension that he may have possessed a weapon, thus compromising their safety, the police were not privileged to subject defendant to a search simply because "[n]obody could give ... a definite answer why they were there, and who lived there." No more adequate basis for the search was provided by the officers' undefined concern that "possibly a burglary [was] in progress, because nobody lived there" or their "realization" that "something wasn't right, something, you know, they were in there illegal." No conduct had occurred in the presence of the police that signified a crime in progress, or

---

* *Terry v. Ohio,* 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968).

otherwise furnished probable cause for an arrest, pursuant to which an incidental search would have been permissible. *Weeks v. United States,* 232 *U.S.* 383, 392, 34 *S.Ct.* 341, 344, 58 *L.Ed.* 652, 655 (1914). The police officers inspected for evidence that someone had broken into the home and found none; and no specific factual detail whatsoever was offered by way of support for the conclusion that defendant and his companions represented a threat to the safety of the officers. The hesitant answers the police received to their questions, standing alone, constituted no adequate basis for going further. *Cf. State v. Miller,* 273 *N.J.Super.* 192, 197, 641 *A.*2d 567 (App.Div.1994).

If, in the light of the juvenile's conduct, the police had an adequate basis upon which to stop him, to question him, and to subject him to a *Terry* search, that justification with respect to the juvenile did not ripen into probable cause in respect of the others present, including defendant.

[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. [citation omitted.] Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places.

[*Ybarra v. Illinois, supra,* 444 *U.S.* at 91, 100 *S.Ct.* at 342, 62 *L.Ed.*2d at 245.]

*See also United States v. Di Re,* 332 *U.S.* 581, 583–87, 68 *S.Ct.* 222, 223–25, 92 *L.Ed.* 210, 214–16 (1948).

The search of defendant in this case is especially troublesome because it was conducted in the course of pursuing another. Given such a circumstance, care is required to assure that no person's legitimate expectations of privacy were sacrificed to the apparent exigencies of the moment. That concern is related to the reason why warrantless searches are presumptively invalid, permitted only where probable cause authentically exists or the special circumstances sanctioning a *Terry* search are present.

The "long-prevailing" constitutional standard of probable cause embodies " 'the best compromise that has been found for accommodating [the] often opposing interests' in 'safeguard[ing] citizens from rash and unreasonable interferences with privacy' and in 'seek[ing] to give fair leeway for enforcing the law in the community's protection.' "

[*Ybarra v. Illinois, supra,* 444 *U.S.* at 95–96, 100 *S.Ct.* at 344, 62 *L.Ed.*2d at 248 (citing *Dunaway v. New York, supra,* 442 *U.S.* at 208, 99 *S.Ct.* at 2254, 60 *L.Ed.*2d at 833, and *Brinegar v. United States,* 338 *U.S.* 160, 176, 69 *S.Ct.* 1302, 1311, 93 *L.Ed.* 1879, 1890–91 (1949)).]

The reasons given by the police to justify the search of defendant were neither sufficiently particularized nor adequately compelling to establish circumstances that would validate a *Terry* search. It is "not [the] inchoate and unparticularized suspicion or 'hunch' " which establishes whether the police acted reasonably in the circumstances, but rather "the specific reasonable inferences which [they are] entitled to draw from the facts in light of [their] experience." *Terry v. Ohio, supra,* 392 *U.S.* at 27, 88 *S.Ct.* at 1883, 20 *L.Ed.*2d at 909. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Ibid.*

The formless intuitions of Detective Busbee and his partner constituted no more valid a basis for such an invasion of personal privacy within the four walls of a private residence than they would have in a public place. Indeed, the locus of the search may well have added an additional privacy-protection ingredient to the mix. "Warrantless searches, particularly in a home, are presumptively unreasonable and invalid unless justified by a recognized exception to the warrant requirement." *State v. Bolte,* 115 *N.J.* 579, 585, 560 *A.*2d 644 (1989). In the face of the privacy interests at stake, there is no difference in the circumstances presented here between a search of the premises or a search of the persons found there. *Payton v. New York,* 445 *U.S.* 573, 585, 100 *S.Ct.* 1371, 1379, 63 *L.Ed.*2d 639, 650 (1980).

The factual flavor of this case is especially critical in applying the constitutional values to which we have adverted. *Ibid.* The police, in pursuit of a fleeing suspect, entered a private residence in which defendant was located, shielded by the privacy-protection

underpinnings of the Fourth Amendment and *N.J. Const.*, art. I, ¶ 7. But for the entirely fortuitous intrusion by the suspect himself, there was no imaginable justification for entry by the police. For a person in such circumstances to have found himself suddenly the object of criminal suspicion and, ultimately, the defendant in a drug prosecution, placed far too greatly at risk the legitimate expectations of privacy that every person possesses, especially when enveloped by the special protections that devolve in a' home. *Id.* at 587, 589, 100 *S.Ct.* at 1380, 1381, 63 *L.Ed.*2d at 651, 653.

In the absence of an articulated basis for apprehending danger, or other specifics amounting to probable cause, policy considerations of constitutional dimension do not countenance an invasion of person or property such as defendant experienced here. *Dunaway v. New York*, 442 *U.S.* 200, 209–10, 99 *S.Ct.* 2248, 2255, 60 *L.Ed.*2d 824,. 834 (1979).

Reversed and remanded.