864 A.2d 1177 (2005)
374 N.J. Super. 425
STATE of New Jersey, Plaintiff-Appellant,
v.
Jeffrey SMITH, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 2004.
Decided January 27, 2005.
*1178 Dana R. Anton, Assistant Prosecutor, argued the cause for appellant (Sean F. Dalton, Gloucester County Prosecutor, attorney; Ms. Anton, on the brief).
Mario A. Iavicoli, Haddonfield, argued the cause for respondent.
*1179 Before Judges SKILLMAN, PARRILLO[1] and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
We granted the State's motion for leave to appeal from an order suppressing statements made by defendant Jeffrey Smith without benefit of Miranda warnings. The case requires us to consider the circumstances under which an officer responding to a domestic dispute must give warnings mandated by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We conclude that a police officer may question those present without giving Miranda warnings, so long as the inquiries are reasonably related to confirming or dispelling suspicion and those questioned are not restrained to a degree associated with formal arrest.
At about 1:30 a.m., three officers of the Mantua Township Police Department responded to a domestic violence call. Mrs. Smith was waiting at the door. She told Patrolman Grady that her husband had choked her and thrown her against the wall. Grady saw red marks on her neck and broken skin on her left elbow. Smith told Grady her husband was a corrections officer and that he was upstairs in bed.
In order to acquire more information, "get both sides of the story," and see whether defendant was injured, Officer Grady went upstairs alone. He found defendant in bed, under the covers. The room was dark, and Grady did not know whether the corrections officer had a weapon. He used his flashlight as he walked to the side of the bed and shined it into defendant's eyes as a "safety tactic," for "tactical advantage." Defendant "seemed to be very alert." Grady asked, "What happened tonight?" Defendant said, "We got into a fight." Grady asked one more question: "Did you choke your wife and throw her into the wall?" Defendant responded, "Yeah." At that point Grady placed defendant under arrest. Grady estimated that he was in defendant's bedroom less than five minutes and that the questioning took a matter of seconds.
Defendant acknowledged that his encounter with Grady took a matter of moments. He awoke to Grady standing over him at the side of the bed and a flashlight shining in his face. He had worn boxer shorts to bed. Grady did not touch him, tell him he could not leave, or tell him that he was under arrest. Because of his training, he thought that if his wife had called the police he was going to be arrested even if he did nothing wrong.
The trial judge found:
The questioning was brief. Only two questions were posed. There was only one officer present in the room at the time of questioning. The defendant was not physically restrained. The defendant was not told that he was under arrest or that he was not free to leave. Also, the defendant was in his bedroom in his own home, which is not a traditionally coercive atmosphere.
There are also various factors that indicate that the questioning of the defendant was a custodial interrogation requiring Miranda warnings. The defendant was clearly in a vulnerable position as he was clad only in boxer shorts and in bed at the time of questioning. The officer was standing on the defendant's side of the bed, shining a light in his eyes, in the officer's words "to temporarily blind the defendant in order to *1180 gain a strategic advantage" (in case he was armed or a weapon was near). A vulnerable position of this type is likely to make an individual more susceptible to coercion. The defendant had just awoken or was in the process of trying to fall asleep. This state may also make him more susceptible to coercion. The officer also was in some way blocking the defendant's egress from the bed and the defendant, from his experience, did not think that he was free to leave.
... Here the questioning was of short duration, there was only one officer involved and it occurred in a place familiar to the defendant. In this instance, however, one must look carefully at the totality of circumstances in determining whether the questioning took place in a custodial manner. The court finds that the State has not borne its burden of proving beyond a reasonable doubt that the questioning of defendant took place in a noncustodial atmosphere. The court finds that the defendant's freedom of action was deprived in a significant way. The environment was coercive and there was a compelling atmosphere present. Therefore, the officer was required to have given Miranda warnings....
We review the record on a motion to suppress to determine whether the findings are supported by credible evidence and the legal conclusions are valid. State v. Alvarez, 238 N.J.Super. 560, 564, 570 A.2d 459, 460 (App.Div.1990) (search). We give deference to those findings "influenced by the judge's opportunity to hear and see the witnesses and to have the `feel' of the case...." Ibid. Our disagreement here is with the judge's application of the law.
Miranda warnings are a prerequisite to "custodial interrogation," which is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of ... freedom of action in a significant way." Miranda, supra, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706-07; State v. Stott, 171 N.J. 343, 364, 794 A.2d 120, 133 (2002). "The requirement that interrogators warn suspects of certain rights is deemed necessary due to pressure inherent in incommunicado interrogation of individuals in a police-dominated atmosphere." Stott, supra, 171 N.J. at 364, 794 A.2d at 133. For that reason, the warnings are not required before "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process [,]" Miranda, supra, 384 U.S. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725, unless the totality of the objective circumstances attending the questioning, viewed from the perspective of the reasonable person, impose a "restraint on freedom of movement of the degree associated with a formal arrest." Yarborough v. Alvarado, 541 U.S. 652, ___, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938, 951 (2004). Relevant circumstances and factors considered in evaluating the restraint involved under the circumstances of the case include: the time, place and duration of the detention; the physical surroundings; the nature and degree of the pressure applied to detain the individual; language used by the officer; and objective indications that the person questioned is a suspect. Stansbury v. California, 511 U.S. 318, 325, 114 S.Ct. 1526, 1530, 128 L.Ed.2d 293, 300 (1994); Stott, supra, 171 N.J. at 365, 794 A.2d at 133; State v. Pierson, 223 N.J.Super. 62, 67, 537 A.2d 1340, 1342-43 (App.Div.1988).
We begin our analysis of the applicability of Miranda warnings in the context of an officer's response to a call about a domestic dispute by recognizing that police action subsequent to entering the residence is likely to involve some restraint on the occupants' freedom of action. In that respect, the situation is analogous to field investigations of suspicious conduct authorized by Terry v. Ohio, 392 U.S. 1, 88 *1181 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and traffic stops authorized by Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). It is well-settled that a person questioned in either of those situations is "detained." See Berkemer, supra, 468 U.S. at 439-41, 104 S.Ct. at 3150-51, 82 L. Ed.2d at 333-34; State v. Toro, 229 N.J.Super. 215, 220, 551 A.2d 170, 172 (App.Div.1988), certif. denied, 118 N.J. 216, 570 A.2d 973 (1989). In the context of a traffic stop, the restraint is recognized as significant. Berkemer, supra, 468 U.S. at 436, 104 S.Ct. at 3148, 82 L.Ed.2d at 331.
Despite the restraint on freedom of action involved in Terry and traffic stops, an officer is not required to give Miranda warnings before asking questions reasonably related to dispelling or confirming suspicions that justify the detention. Berkemer, supra, 468 U.S. at 439-40, 104 S.Ct. at 3150, 82 L.Ed.2d at 334. Miranda warnings are required only if the stop, due to its duration or other attendant circumstances, "is fairly characterized as the functional equivalent of an arrest." Berkemer, supra, 468 U.S. at 442, 104 S.Ct. at 3150, 82 L.Ed.2d at 336; Toro, supra, 229 N.J.Super. at 221, 551 A.2d at 173; see State v. Dickey, 152 N.J. 468, 478, 706 A.2d 180, 185 (1998) (Terry stop becomes a de facto arrest when officer's conduct is unreasonably intrusive). Minimally intrusive curtailments of freedom of action reasonably related to securing the safety of the officer and others present at the scene during the investigation do not convert a proper Terry stop into a formal arrest. Toro, supra, 229 N.J.Super. at 221, 551 A.2d at 173.
Because Terry and traffic stops necessarily involve some restraint on freedom of action, the question is not whether a reasonable person would feel free to leave at the inception of the questioning. The question is whether a reasonable person, considering the objective circumstances, would understand the situation as a de facto arrest or would recognize that after brief questioning he or she would be free to leave. State v. Brown, 352 N.J.Super. 338, 352-54, 800 A.2d 189, 197-98 (App.Div.), certif. denied, 174 N.J. 544, 810 A.2d 64 (2002); Toro, supra, 229 N.J.Super. at 222 n. 1, 551 A.2d at 173 n. 1; Pierson, supra, 223 N.J.Super. at 67, 537 A.2d at 1342-43; State v. Coburn, 221 N.J.Super. 586, 596, 535 A.2d 531, 536-37 (App.Div.1987), certif. denied, 110 N.J. 300, 540 A.2d 1281 (1988).
We see no basis for applying a different analysis or standard in determining the need for Miranda warnings when the police encounter with the person questioned begins with the officer's response to a call about a domestic dispute. The fact that such an investigation typically takes place in the suspect's home away from the public view is not an inherently coercive circumstance. When considering the need for Miranda warnings before questioning in a private residence, our courts have not viewed the home as a location so isolated or dominated by the police as to lead the reasonable person to conclude he or she is in custody or in danger of abuse. State v. Timmendequas, 161 N.J. 515, 614-15, 737 A.2d 55, 108-09 (1999), cert. denied, 534 U.S. 858, 122 S.Ct. 136, 151 L.Ed.2d 89 (2001); State v. P.Z., 152 N.J. 86, 103, 703 A.2d 901, 910 (1997); State v. Gosser, 50 N.J. 438, 446, 236 A.2d 377, 381 1967), cert. denied, 390 U.S. 1035, 88 S.Ct. 1434, 20 L.Ed.2d 295 (1968); Coburn, supra, 221 N.J.Super. at 596-97, 535 A.2d at 536-37.
Courts of other jurisdictions have taken a similar view of in-home questioning in cases involving domestic violence. See, e.g., United States v. Rogers, ___ F.3d ___ (10th Cir.2004) ("the fact that the encounter took place in Roger's home does not weigh in favor of concluding he was in custody"); Patrice v. Murphy, 43 F.Supp.2d 1156, 1163 (W.D.Wash.1999) *1182 ("type of police-dominated, coercive atmosphere that made the courts concerned about the voluntariness of certain statements was totally absent" during this in-home investigation of domestic violence).
Nor does an officer's statutory obligation to arrest on probable cause to believe that domestic violence has occurred "if the victim exhibits signs of injury caused by an act of domestic violence," N.J.S.A. 2C:25-21a(1), lead us to conclude that Miranda warnings are required without the functional equivalent of an arrest. The purpose of Miranda warnings is to neutralize the pressure inherent in custodial interrogation. Stott, supra, 171 N.J. at 364, 794 A.2d at 132. Custody at the time of questioning, from the perspective of the reasonable person, not the likelihood of future custody, is determinative. Yarborough, supra, 541 U.S. at ___, 124 S.Ct. at 2149, 158 L.Ed.2d at 951.
In Berkemer, the Supreme Court expressly declined to require Miranda warnings based on the existence of circumstances establishing probable cause. Berkemer, supra, 468 U.S. at 435 n. 22, 104 S.Ct. at 3148 n. 22, 82 L.Ed.2d at 331 n. 22. The Court explained:
The threat to a citizen's Fifth Amendment rights that Miranda was designed to neutralize has little to do with the strength of an interrogating officer's suspicions. And, by requiring a policeman conversing with a motorist constantly to monitor the information available to him to determine when it becomes sufficient to establish probable cause, [a] rule [requiring warnings based on probable cause] would be extremely difficult to administer.
[Ibid.]
Thus, absent objective manifestations that the person is a "suspect" or is under arrest, neither the officer's nor the suspect's intentions or perceptions are relevant. Stansbury, supra, 511 U.S. at 325, 114 S.Ct. at 1530, 128 L.Ed.2d at 300; Brown, supra, 352 N.J.Super. at 353, 800 A.2d at 197-98; see Stott, supra, 171 N.J. at 365, 794 A.2d at 133 (presence of "objective indications that defendant was a suspect" is one factor to be considered); see generally 2 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure §§ 6.6(a), 6.6(c) (2d ed. 1999). As we noted in Brown,"it is the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time" of the questioning that implicates Miranda. Brown, supra, 352 N.J.Super. at 353, 800 A.2d at 197.
Courts of other jurisdictions in which police officers have a similar statutory obligation to arrest in cases of domestic violence have not treated the obligation as a factor weighing in favor of Miranda warnings. See, e.g., State v. Herting, 604 N.W.2d 863, 864 (S.D.2000). In Herting, on facts quite similar to those involved in this case, the Supreme Court of South Dakota rejected defendant's claim that Miranda warnings were required. Id. at 866-67. The Court recognized that questioning and fact gathering by a law enforcement officer responding to a domestic violence dispute is essential "to bring out the person's explanation or lack of explanation of the circumstances which aroused the suspicion of the police, and enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges." Id. at 866. The Court reasoned, "Because [a state statute] mandates an arrest of the instigator of domestic violence, [the officer] had an obligation to get both sides of the story before making that mandatory arrest." Ibid. The court considered the objective circumstances, held that the defendant's subjective view of the likelihood of her arrest was irrelevant and concluded that a reasonable person in defendant's situation would have understood that the officer was simply trying to gather information *1183 "before determining if an arrest should be made and if so who should be arrested." Id. at 866-67; see also State v. Boline, 575 N.W.2d 906, 909-10 (N.D.1998) (warnings not required where an investigatory stop was warranted by a report of domestic violence, the suspect was deemed subject to a reasonable Terry stop).
Viewing the totality of the circumstances in this case from the perspective of a reasonable person in defendant's position, we conclude that defendant's treatment was not the functional equivalent of a formal arrest and Miranda warnings were not required. Yarborough, supra, 541 U.S. at ___, 124 S.Ct. at 2149, 158 L.Ed.2d at 951. The questioning was brief, lasting a matter of moments. The questions were related to dispelling or confirming the officer's suspicion that defendant had choked and pushed his wife and were neither harassing nor intimidating. Toro, supra, 229 N.J.Super. at 220-21, 551 A.2d at 172-73; Herting, supra, 604 N.W.2d at 866. While one of the two questions directly presented facts reported by defendant's wife, the question was not a stratagem or phrased to coerce an admission by suggesting the officer had reached a conclusion about the veracity of the information. The officer's position at the side of defendant's bed and his protective use of the flashlight momentarily restricted defendant's movement, but no more so than a protective frisk during a Terry stop. See ibid. The officer did not touch defendant or ask him to move, to get up or to stay still, and he did not tell defendant he was under arrest.
Under all of the attendant circumstances, defendant's bedroom, occupied by one officer and defendant for moments of non-threatening questioning, was "substantially less `police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself and in the subsequent cases in which [the Supreme Court has] applied Miranda." Berkemer, supra, 468 U.S. at 439, 104 S.Ct. at 3149-50, 82 L.Ed.2d at 334; cf. Orozco v. Texas, 394 U.S. 324, 325, 89 S.Ct. 1095, 1096, 22 L.Ed.2d 311, 313-14 (1969) (holding Miranda warnings were required when suspect was questioned in his bedroom by four officers and one of the officers testified that the suspect was under arrest). This was on-the-scene questioning not custodial interrogation.
We do not imply or suggest a special standard for identifying "custodial interrogation" during a response to a domestic violence call. To the contrary, we see no reason to apply a special rule that would require Miranda warnings during such investigations absent restraints to a degree associated with formal arrest. Yarborough, supra, 541 U.S. at ___, 124 S.Ct. at 2149, 158 L.Ed.2d at 951.
In concluding that "defendant's freedom of action was restrained in a significant way," the trial judge failed to consider that some restraint on freedom of action is involved in most on-the-scene questioning, and he placed too much emphasis on circumstances that the officer neither controlled nor exploited. The judge placed too much emphasis upon the vulnerability and susceptibility to "coercion" that he attributed to defendant's attire and position in bed. Cf. State v. Choinacki, 324 N.J.Super. 19, 45-47, 734 A.2d 324, 338-40 (App.Div.), certif. denied, 162 N.J. 197, 743 A.2d 849 (1999) (defendant in hospital bed); People v. Brown, 327 Ill.App.3d 816, 261 Ill.Dec. 947, 764 N.E.2d 562, 570 (noting that a person awakened and questioned about a domestic violence matter would likely feel surprise or panic but "not, as a natural consequence, believe he is in police custody"), appeal denied, 199 Ill.2d 560, 266 Ill.Dec. 442, 775 N.E.2d 4 (2002). Miranda warnings are required to protect against police conduct not against circumstances beyond the control *1184 of police officers. See Coburn, supra, 221 N.J.Super. at 596, 535 A.2d at 536-37. An officer responding to a domestic violence call does not select the hour and cannot reasonably delay the investigation until a more convenient time. See Herting, supra, 604 N.W.2d at 866; Boline, supra, 575 N.W.2d at 910. The circumstances required prompt investigation, and the officer did nothing to exploit defendant's position or attire.[2]
Similarly, the judge improperly focused on defendant's view of the likelihood of arrest. There simply is no connection between defendant's belief that he would be arrested regardless of his conduct and the coercion that is relevant under Miranda.
Reversed.
NOTES
[1] Judge Parrillo did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] As the Legislature has recognized, domestic violence may involve serious danger and law enforcement officers have an obligation to enforce the law and protect the victim. N.J.S.A. 2C:25-18. See MichaelAnn Knotts, NJ Domestic Violence: A Magnet for Murders, 14 New Jersey Lawyer 1 (January 3, 2004) (while overall homicides in New Jersey dropped twenty percent between 1993 and 2002, domestic violence homicides dropped four percent).