**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1141-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ZAKARIYYA AHMAD,

     Defendant-Appellant.

_____

Submitted September 16, 2019 – Decided November 18, 2019

Before Judges Rothstadt, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-03-0640.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Stephen Anton Pogany, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Zakariyya Ahmad appeals from his conviction, following a jury trial, of second-degree reckless manslaughter, N.J.S.A. 2C:11-4(b)(1), as a lesser included offense on count three, as well as all other indicted charges.[1]

The charges stemmed from a robbery or attempted robbery of a café on October 27, 2013, by defendant and two codefendants, Ja-Ki Crawford and Daryl Cline during which Joseph Flagg was shot and killed. On the same day, as admitted in defendant's merits brief, defendant was treated at a hospital for multiple gunshot wounds.

Rahsaan Johnson, a detective with the Essex County Prosecutor's Office, testified at both a hearing on defendant's motion to suppress his statement to Johnson and another detective and at trial. Johnson claimed he became aware that defendant had been shot and believed the same person or persons who shot Flagg also shot defendant. He consequently interviewed defendant on October 27, 2013, and obtained a statement which was played to the jury at defendant's trial.

---

[1] Defendant was indicted for second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 15-1(a)(1) (count one); first-degree robbery, N.J.S.A. 2C:15-1(a)(1) (count two); first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2) (count three); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count six).

On appeal, defendant argues:

POINT I

THE STATEMENT OF DEFENDANT – WHO WAS A JUVENILE – SHOULD HAVE BEEN SUPPRESSED BECAUSE HE WAS IN CUSTODY AND NOT GIVEN MIRANDA WARNINGS PRIOR TO INTERROGATION; IN ADDITION, THE POLICE AFFIRMATIVELY MISREPRESENTED DEFENDANT'S STATUS AS A VICTIM TO OBTAIN PERMISSION FROM HIS PARENTS FOR THE INTERROGATION.

POINT II

THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT IT COULD CONVICT THE DEFENDANT OF FELONY MURDER ON THE BASIS OF BEING A MERE CO-CONSPIRATOR TO ROBBERY. ACCORDINGLY, THE FELONY MURDER CONVICTION MUST BE VACATED.

POINT III

THE RECKLESS MANSLAUGHTER CONVICTION SHOULD BE VACATED BECAUSE THE JURY WAS NEVER INSTRUCTED ON HOW TO RECONCILE THE PURPOSEFUL STATE OF MIND REQUIRED TO IMPOSE ACCOMPLICE LIABILITY WITH THE RECKLESS STATE OF MIND THAT IS AN ESSENTIAL ELEMENT OF MANSLAUGHTER.

Unpersuaded by any of these arguments, we affirm.

3

## I.

Defendant contends that his statement to detectives on the day of the murder, should have been suppressed because he was in custody and not given Miranda[2] warnings prior to his interrogation. He claims the custodial nature of the interrogation is evidenced by: his transportation from the hospital to the Newark Police Department following his release after emergency surgery to treat multiple gunshot wounds and his concomitant receipt of five doses of Fentanyl; his subsequent transportation in the back of a police car to the Essex County Prosecutor's Office after "sitting in an interview room, at the police department 'for a couple of hours,'" for questioning; and his interview, that lasted for a few hours, during which he was asked "accusatory" questions by detectives who were "deeply skeptical" of his claim that he had been shot at a different location.

Defendant, who was seventeen at the time, also claims the detectives "affirmatively misrepresented" his status as a victim in order to obtain his parent's permission for the interrogation. As support for this claim, he cites both his mother's entry into the interview room after a crime-scene detective was

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1141-17T3

called to take photographs of defendant's hands and her demand that detectives stop interrogating her son.

Unless <u>Miranda</u> warnings are administered, statements made by a defendant while in custody, whether exculpatory or inculpatory, may not be used in the prosecutor's case-in-chief. <u>State v. Hartley</u>, 103 N.J. 252, 275 (1986). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Miranda</u>, 384 U.S. at 444. Absent a formal arrest, the "critical determinant of custody is whether there has been a significant deprivation of the suspect's freedom of action based on the objective circumstances[.]" <u>State v. P.Z.</u>, 152 N.J. 86, 103 (1997).

> Relevant circumstances and factors considered in evaluating the restraint involved under the circumstances of the case include: the time, place and duration of the detention; the physical surroundings; the nature and degree of the pressure applied to detain the individual; language used by the officer; and objective indications that the person questioned is a suspect.
>
> [<u>State v. Smith</u>, 374 N.J. Super. 425, 431 (App. Div. 2005) (citing <u>Stansbury v. California</u>, 511 U.S. 318, 325 (1994)).]

Judge Alfonse J. Cifelli conducted an evidentiary hearing during which he heard testimony from Johnson, defendant and his mother; the judge also

reviewed the transcript of the interview. Based on his review of the transcript and Johnson's testimony, which the judge found to be "candid, consistent, and unwavering both on direct and cross[-]examination," Judge Cifelli found, in a comprehensive oral decision:

> [D]efendant was interrogated as a victim of a shooting as opposed to a suspect. The interrogation, again pursuant to the transcript, was limited to the facts and circumstances surrounding his injuries without any questions or references of the shooting and/or death of Joseph Flag[g]. Nor did [defendant] disclose any information or any involvement in the shooting of Mr. Flag[g].

The judge acknowledged defendant was questioned by two detectives in an interview room at the Prosecutor's Office shortly after he was treated for gunshot wounds but, nonetheless found the questioning was not conducted in a custodial setting because:

> One, [defendant] presented himself to officers as a victim of a shooting several blocks from where another man had just been murdered. Two, the detective did not pressure [defendant], nor did their questioning appear to be pursued in order to obtain any incriminating statements. [Defendant] was not linked to the homicide in question at the time of his questioning. Objectively, defendant was not a suspect at the time of the questioning. The detectives only later received [the Newark Police Department Ballistics Laboratory's] report and incriminating statements . . . from others connecting [defendant] at the scene of the homicide. Detectives did not ask [defendant] any

6

questions whatsoever pertaining to the murder of Joseph Flag[g] and restricted their questioning specifically to his injuries and/or the gunshots causing those injuries.

[Defendant] was at no time told during the questioning that he was not free to leave. [Defendant] appeared to be responsive and receptive to the detective's questioning indicating he was neither coerced nor restrained. Defendant was never promised anything for his cooperation or threatened for noncompliance.

Judge Cifelli had already found defendant's testimony that he was told by the police that he was not free to leave or to go with his parents, and that he was agitated and wanted to leave, was "not corroborated either by his mother's testimony [or] more importantly the testimony of [the] detective and/or the transcript of the discourse between" defendant and the detective. The judge further found:

Defendant, during the course of the interrogation, did not ask for any breaks; specifically did not ask to go to the bathroom, eat, drink, et cetera. He never asked to stop the statement. He never asked for an attorney or his parents. He never refused to continue. He answered all questions without any reluctance or hesitation. He made no complaints -- contrary to his testimony, I should say, during the course of the [e]videntiary [h]earing, he made no complaints of pain, no problem understanding or speaking. And after the statement was -- and nor did the parents at anytime seek to obtain entrance or admission into the interrogation room. After the statement was completed, defendant left with his parents.

A-1141-17T3

The scope of our review of a judge's findings of fact on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). "We do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." State v. Barone, 147 N.J. 599, 615 (1997). We only "determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). We are not in a good position to judge credibility and should not make new credibility findings. State v. Locurto, 157 N.J. 463, 474 (1999). It is only where we are "thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction . . . [that we] appraise the record as if [we] were deciding the matter at inception and make [our] own findings and conclusions." Johnson, 42 N.J. at 162 (citations omitted).

The testimony and evidence Judge Cifelli found to be credible and reliable were sufficient to support his findings and are entitled to our deference on appeal. See State v. Elders, 192 N.J. 224, 243-44 (2007). Although his conclusions as to matters of law are not entitled to deference, State v. Shaw, 213 N.J. 398, 411 (2012), we are in accord with his cogent application of the law to the facts he found. We agree defendant was not subject to custodial

interrogation by the detectives at the Essex County Prosecutor's Office. "The rights set forth in <u>Miranda</u> are not implicated 'when the detention and questioning is part of an investigatory procedure rather than a custodial interrogation[.]'" <u>State v. Smith</u>, 307 N.J. Super. 1, 9 (App. Div. 1997) (quoting <u>State v. Pierson</u>, 223 N.J. Super. 62, 66 (App. Div. 1988)).

Judge Cifelli's findings also scotch defendant's claim that the police misrepresented his status as a victim to his parents in order to obtain their permission to question him. The judge found testimony of defendant's mother and Johnson established that defendant's "parents were aware of defendant being questioned about his injuries." He also found the transcript of defendant's statement "contain[ed] acknowledgement from both detectives as well as [defendant] that defendant's parents gave the detective permission to speak with [defendant]." Further, the judge found defendant's parents remained just outside the interview room during questioning, were aware defendant was being questioned, "never asked to be permitted to accompany" defendant in the room, and, as admitted by defendant's mother during the evidentiary hearing, she interjected when pictures were taken of her son's hand and asked the detectives to stop; they complied. Those findings, in tandem with the judge's finding that the detectives viewed defendant as a victim during questioning, did not have

information linking him to Flagg's homicide until after the interview was completed and, indeed, did not ask defendant about the Flagg homicide, are supported by the record and are entitled to our deference.

We thus affirm the denial of defendant's motion to suppress evidence substantially for the reasons set forth in Judge Cifelli's well-reasoned decision.

II.

Defendant also argues the trial judge erred in instructing the jury. He first contends the trial court improperly instructed the jury that it could convict defendant of felony murder on the basis of being a co-conspirator to robbery, because conspiracy to commit robbery is not a predicate offense to felony murder. Relying on State v. Grey, 147 N.J. 4 (1996), defendant contends the instructions did not clearly inform the jury that if it found defendant guilty as only a co-conspirator to robbery, it could not also find him guilty of felony murder.

Defendant did not raise any objection to the instruction to the trial judge, and we previously recognized, "[t]he appropriate time to object to a jury charge is 'before the jury retires to consider its verdict.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 1:7-2). As such, we review for plain error. Ibid. Under that standard, the error will be disregarded "unless it is of such a nature

10

as to have been clearly capable of producing an unjust result[.]" R. 2:10-2. The error "must be sufficient to raise 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" Funderburg, 225 N.J. at 79 (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).

In Grey, our Supreme Court perpended the predicate offenses for felony murder listed in N.J.S.A. 2C:11-3(a)(3), and recognized "the substantive crime of conspiracy is not a predicate offense for felony murder." 147 N.J. at 15. As such, the Court mandated, "[i]n felony-murder cases, courts should instruct juries that they may not convict a defendant of felony murder unless they convict the defendant of the underlying offense that is a predicate to the felony-murder conviction." Id. at 16.

Viewing the entire jury charge as a whole, Boryszewski v. Burke, 380 N.J. Super. 361, 374 (App. Div. 2005), including the instructions on the separate charges of conspiracy to commit robbery (count one) and robbery (count two), we discern Judge James W. Donohue followed that mandate in instructing the jury:

> You cannot find [defendant] guilty of felony murder unless you first find him guilty, beyond a reasonable doubt, o[f] having committed or attempting to commit the crime of robbery as charged in count two.

> I have previously defined for you the elements of conspiracy to commit robbery as charged in count one of the indictment. Conspiracy to commit robbery is a separate offense from robbery and cannot be the basis of a conviction of felony murder. Therefore, if you find [defendant] guilty, beyond a reasonable doubt of conspiracy to commit robbery, as charged in count one, but you find the defendant not guilty of robbery as charged in count two, then you must find him not guilty of felony murder.

The judge—in accordance with the Grey Court's determination that "[t]he felony murder charge required that the jurors first find that defendant was 'engaged in the commission of [the predicate offense]' (emphasis added) for the jurors to convict of felony murder[,]" 147 N.J. at 15 (emphasis in original)—told the jury on several occasions that the State was required to "prove beyond a reasonable doubt that [defendant] was engaged in the commission of, or attempt to commit, or flight after committing , or attempting to commit the crime of robbery[.]" And Judge Donohue explicitly instructed the jury, "You cannot find [defendant] guilty of felony murder unless you first find him guilty, beyond a reasonable doubt, [of] having committed or attempting to commit the crime of robbery as charged in count two" of the indictment.

We disagree with defendant's contention that Grey prohibits a conviction for felony murder if a defendant is guilty of the predicate offense as a co-conspirator. The Court acknowledged the plain language of the felony-murder

12

statute did not list the substantive crime of conspiracy. Ibid. Robbery, however, is a listed predicate offense, N.J.S.A. 2C:11-3(a)(3), and the jury properly considered—in accordance with the judge's instructions—if defendant was engaged in the commission of the robbery.

Judge Donohue's instruction conveyed the law and was unlikely to confuse or mislead the jury; as such, we will not reverse. Boryszewski, 380 N.J. Super. at 374. We perceive no error, much less one that "is of such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2.

We also view defendant's other jury-instruction argument under that plain error standard as he did not lodge any objection to the reckless-manslaughter instruction. Defendant argues the instruction was confusing because the judge "separated the charge on accomplice liability from the substantive offenses," and then, in the context of the substantive offenses, used the term "a person for whom he is legally responsible" instead of the words "accomplice" or "co-conspirator." Defendant contends the instruction left the jury in a quandary as to how to reconcile the purposeful state of mind required to impose accomplice liability with the reckless state of mind it considered in its deliberations on manslaughter. He also argues that the accomplice liability instruction "directed the jury to consider whether defendant had a purpose to promote a reckless act."

13

We determine defendant's arguments regarding the manslaughter jury instruction are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). The jury charge paralleled the Model Jury Charge on reckless manslaughter, and "[i]t is difficult to find that a charge that follows the Model Charge so closely constitutes plain error." Mogull v. CB Commercial Real Estate Grp., 162 N.J. 449, 466 (2000). See Model Jury Charges (Criminal), "Reckless Manslaughter (N.J.S.A. 2C:11-4(b)(1))" (rev. Mar. 22, 2004). We add only that Judge Donohue made clear that "accomplice liability [was] not to be considered" in the jury's deliberations on count three, which included reckless manslaughter as a lesser-included crime to murder. He specified at the start of his instruction on count three that the State alleged defendant committed murder as a principal, "or that another for whom he is legally responsible as a co-conspirator committed" the murder. (Emphasis added). Thus, any reference in the reckless manslaughter instruction to a person for whom defendant was legally responsible did not, contrary to defendant's contention, include an accomplice.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1141-17T3