**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2653-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NINA N. GONSALVES,

     Defendant-Appellant.

_____

Argued February 25, 2025 – Decided March 11, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 22-08-1253.

Michael Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the brief).

Leslie-Ann M. Justus, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Boris Moczula, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

After a jury trial, defendant Nina N. Gonsalves was found guilty of fourth-degree operating a motor vehicle while her license was suspended for a second or subsequent conviction for driving under the influence (DUI), N.J.S.A. 2C:40-26(b). Defendant appeals from the May 16, 2023 Law Division order denying her motion to dismiss the indictment and the May 25, 2023 order denying her motion to suppress statements made prior to receiving Miranda[1] warnings. Defendant also appeals from her sentence. Having reviewed the record, parties' arguments, and applicable legal principles, we affirm.

I.

We recite the pertinent facts adduced at the motion hearings and trial as relevant to defendant's issues on appeal. On June 22, 2021, at approximately 9:30 p.m., Middletown Police Department (MPD) officers responded to a report of a motor vehicle accident. A motorist, Kevin Rhoads, had called 911 after witnessing a vehicle hit a sign, go off the road, and stop in front of a commercial establishment on Route 35. Officer Donald Porter arrived at the scene first and began investigating after Rhoads pointed him in the direction of the vehicle, which was a silver Jeep. Officer Omar Akel and four other officers also arrived

_____

[1] Miranda v. Arizona, 384 U.S. 436, 479 (1966).

at the scene.

At the suppression hearing, Porter testified that he was dispatched to the accident scene without any information regarding the driver of the vehicle or knowledge of how the accident occurred. After Rhoads directed Porter toward the vehicle, Porter located defendant and "initiated a basic motor vehicle investigation." He observed the Jeep was stopped in a parking lot and had a flat tire. Porter and the other officers observed two individuals, later identified as defendant and Scott Luery, sitting on chairs outside of a commercial establishment near the Jeep. Porter began speaking with defendant from a safe distance of six to ten feet due to the COVID-19 pandemic. Defendant was "standoffish" to Porter and remarked that she was unsure why police were there and that police did not need to be there. After Porter advised defendant he was investigating the accident and asked her what happened, defendant stated, "[T]here was a third person involved and that that person took off running."

Defendant refused Porter's request to provide information about the alleged third person, prompting him to ask defendant again what had happened. She then changed her account of what led to the accident, stating that "she was driving[,] and she swerved to avoid people running in the roadway." Porter testified his concerns heightened based on the need to conduct "a welfare check"

3

for other individuals, but defendant provided no more information.

Defendant was discourteous to the officers and used foul language, raising Porter's suspicion that she may have imbibed alcohol. After Porter asked again for more details, defendant admitted "she was driving[,] . . . and she believed she was being followed," which prompted her to "swerve[] off the roadway." Defendant paced and moved around as she spoke. Porter testified that while he was investigating the accident, she was not under arrest, but she was not free to leave as he tried to ascertain how the accident happened. After defendant stated she was the driver, Porter spoke with Akel. Porter thereafter left defendant "for a moment" to observe "where the accident occurred and . . . [the] damage."

Akel testified he was not the first responding officer on the scene, but he was the main investigating officer because the accident occurred in his assigned district. Akel questioned Rhoads about what he had witnessed. Rhoads described watching the Jeep swerve off the road and hit a street sign. After the Jeep stopped, Rhoads watched defendant exit from the driver's-side door and Luery exit from the front passenger-side door. Akel observed the Jeep was missing its driver's-side-view mirror, had scrapes along the front quarter panel, and had a flat front tire. Akel investigated the area Rhoads described and "found

4

tire tracks" and a "side[-]view mirror which had broken off[,]" matching the Jeep's missing driver's-side-view mirror.

Akel testified that standard accident investigation procedure consisted of questioning all parties involved and witnesses to ascertain what occurred. Luery told Akel that he owned the Jeep. Luery apologized to Akel for allowing defendant to drive his Jeep and admitted defendant should not have been driving because her license was suspended from "previous DUI incidents." Akel explained that the officers "continu[ed] to just conduct a preliminary investigation into the collision," and he went to speak with defendant.

He also observed the Jeep's "front driver's seat . . . to be extremely close to the steering wheel, too close in fact, for [Luery] to have been operating that vehicle." While trying to speak with defendant, Akel smelled alcohol emanating from her breath and observed her eyes were watery and bloodshot. Defendant told Akel she was not the driver. After Akel asked defendant to comply with standard field sobriety tests, she stated, "[S]he [did not] consent to sh[*]t[,] and she [would not] be taking any tests." Akel advised defendant that if she failed to take the field sobriety test, she would be placed under arrest. Defendant continued to refuse the tests, and Akel arrested her for driving a motor vehicle while intoxicated. Akel handcuffed defendant and secured her in a police

5

vehicle. At the scene, Akel told Luery he would "receive a number of summonses in the mail, including [summonses for] allowing a suspended driver to operate a vehicle" and for allowing another person to operate a motor vehicle while under the influence.[2] During cross-examination, Akel clarified that he issued Luery "a summons for allowing an intoxicated driver to operate a vehicle" even though he apparently wrote "operating under the influence of liquor" on the ticket.

At MPD headquarters, defendant received Miranda warnings. Defendant agreed to take a breathalyzer test but then refused to perform the test in violation of N.J.S.A 53:1-15. "[S]he berated [Akel] the entire time" while also cursing at him and "the other officers in the holding area." She received thirteen motor vehicle summonses. The officers learned that in August 2019, defendant had been convicted of her second DUI and received a two-year driver's license suspension. On June 23, 2021 the day after the incident, "Akel signed a complaint [against defendant] . . . for operating a motor vehicle during a period of license suspension in violation of N.J.S.A. 2[C]:40-26[b]."

_____

[2] N.J.S.A. 39:4-50(a).

6

In October 2021, an investigator with the Office of the Public Defender interviewed Luery regarding the accident. The investigator's report memorialized Luery's revised statement that he drove the Jeep on June 22. Defendant's counsel notified the State's prosecutor of Luery's revised statement alleging defendant was not the driver. Luery detailed that Rhoads must have witnessed defendant on the driver's side of the Jeep looking for her phone, which "had fallen somewhere in the car at the time the [Jeep] veered from the roadway." Luery indicated he was on "the passenger's side to inspect the damage." The State's prosecutor acknowledged receipt of the investigator's report, but the State did not present Luery's revised statement to the grand jury.

On May 16, 2023, after argument, the motion court issued an order accompanied by an oral decision denying defendant's motion to dismiss the indictment. At the outset, the court noted that "the grand jury does not consider a full and complete adversarial presentation and does not make its decisions after consideration and with the benefit of the views of the defense." The court noted that the State is not required to "meticulously sift through the entire record of investigative files to see if some combination [of] . . . facts and inferences might rationally sustain a defense." It was undisputed that "defendant was charged with the more serious [criminal] offenses and . . . faced a significant period of

incarceration," while Luery was "not facing those penalties." The court denied defendant's motion, finding Luery's statement that he was driving would have required grand jurors to "weigh[] . . . credibility factors," and his "[c]onflicting testimony [could not] be [deemed] clearly exculpatory[,] because it require[d] an assessment by the grand jurors of the credibility of the various witnesses." Moreover, the court determined Luery's DUI summons was not clearly exculpatory because "a person is subject to" DUI for allowing an individual to operate a vehicle under the influence, which, at the scene, Luery had admitted to doing.

On May 25, after an evidentiary hearing, the court issued an order accompanied by an oral decision denying defendant's motion to suppress. The court found Porter's and Akel's credible testimony established that they "began to conduct a motor vehicle investigation," and defendant was not initially under arrest. The court explained that: the officers did not remove defendant from the scene until she refused to complete field sobriety tests; the officers did not restrain defendant during the accident investigation; Porter permitted her to freely move around and pace; Porter asked defendant questions for "no more than [ten] minutes"; and the officers asked "general questions [such] as, what happened here." The court also found Porter walked away from defendant to

8

speak with Akel. The court noted that after defendant refused to perform field sobriety tests, Akel "told . . . defendant that if she did not comply, she would be placed under arrest." In denying the motion, the court reasoned, "D[U]I suspects are not entitled to <u>Miranda</u> warnings prior to the administration of field sobriety tests." Finally, the court determined that because this was "routine questioning during a traffic stop . . . , <u>Miranda</u> was not required" for the officers to ask defendant about the accident.

On August 2, 2023, a jury convicted defendant of fourth-degree operating a motor vehicle during a period of license suspension for a second or subsequent violation of driving while intoxicated.[3] On April 30, the trial judge rendered an oral decision on defendant's outstanding summonses and heard argument on defendant's sentence. The judge found Porter's and Akel's trial testimony was credible but found Luery's and defendant's trial testimony lacked credibility.

---

[3] On August 12, 2023, defendant filed a notice of motion for a new trial pursuant to <u>Rule</u> 3:20-1. It is unclear what action was taken on defendant's application. "An issue not briefed on appeal is deemed waived." <u>Woodlands Cmty. Ass'n v. Mitchell</u>, 450 N.J. Super. 310, 319 (App. Div. 2017) (quoting <u>Sklodowsky v. Lushis</u>, 417 N.J. Super. 648, 657 (App. Div. 2011)).

After making specific factual findings for each summons, the judge found defendant guilty of seven summonses.[4]

During the sentencing argument, defense counsel acknowledged the judge was required to issue defendant a mandatory 180-day term of incarceration as a condition of probation but argued against a lengthier sentence. Defense counsel referenced defendant's responsibilities for her son, her lack of prior criminal convictions, and her employment history. He also argued for mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (no history of criminal activity) and other mitigating facts. Defense counsel requested the judge order "a period of probation with the 180 days, [to] allow [his] client to serve her time . . . at the Monmouth County Jail and then go back to her family and restart her life." The State argued for a 364-day term of imprisonment and argued for aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk of re-offense) and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter).

---

[4] The judge found defendant guilty of: (1) driving with a suspended license, N.J.S.A. 39:3-40; (2) failure to possess a driver's license, N.J.S.A. 39:3-29; (3) refusal to submit to a chemical test, N.J.S.A. 39:4-50.4a; (4) reckless driving, N.J.S.A. 39:4-96; (5) careless driving, N.J.S.A. 39:4-97; (6) failure to maintain a lane, N.J.S.A. 39:4-88; and (7) failing to comply with fingerprinting, N.J.S.A. 53:1-15.

The judge found mitigating factors seven and ten, N.J.S.A. 2C:44-1(b)(10) (particularly likely to respond affirmatively to probationary treatment) and aggravating factors three and nine. After finding the aggravating factors outweighed the mitigating factors, the judge sentenced defendant to a three-year term of probation with the mandatory minimum 180 days of county jail time. The judge also ordered defendant to complete substance abuse evaluations, receive treatment, pay applicable fines and penalties, and comply with other conditions of probation.

On appeal, defendant raises the following points for our consideration:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS, THE STATE'S INDICTMENT BECAUSE THE PROSECUTOR FAILED TO PRESENT TO THE GRAND JURY CLEARLY EXCULPATORY EVIDENCE IN THE PROSECUTOR'S POSSESSION.

POINT II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS FOR VIOLATION OF MIRANDA.

POINT III

DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.

11

II.

We first address defendant's contention that the court erroneously denied her motion to dismiss the indictment despite the State's failure to present clearly exculpatory evidence to the grand jury. Defendant specifically argues reversal is warranted because the State failed to introduce Luery's exculpatory statement that he was driving the vehicle on the date of the accident and that Luery was also issued a summons for operating the vehicle under the influence. We disagree.

We review "[a] trial court's denial of a motion to dismiss an indictment . . . for an abuse of discretion." State v. Italiano, 480 N.J. Super. 1, 5 (App. Div. 2024). "'[B]ecause grand jury proceedings are entitled to a presumption of validity,' defendant bears the burden of demonstrating the prosecutor's conduct requires dismissal of the indictment." State v. Majewski, 450 N.J. Super. 353, 365 (App. Div. 2017) (alteration in original) (quoting State v. Francis, 191 N.J. 571, 587 (2007)).

A prosecutor's duty to present exculpatory evidence to a grand jury is limited. The State is required to present to a grand jury "evidence that is credible, material, and so clearly exculpatory as to induce a rational grand juror to conclude that the State has not made out a prima facie case against the

accused." State v. Hogan, 144 N.J. 216, 236 (1996) (italicization omitted). "In Hogan, the Court 'impos[ed] a limited duty on prosecutors' to inform the grand jury of exculpatory evidence 'that both directly negates the guilt of the accused and is clearly exculpatory.'" State v. Hyppolite, 236 N.J. 154, 165 (2018) (alteration in original) (emphasis omitted) (quoting Hogan, 144 N.J. at 237).

The first requirement focuses on "whether the State has made out a prima facie case of the accused's guilt." Id. at 166 (quoting Hogan, 144 N.J. at 237). In other words, the first requirement focuses on "whether there is probable cause to indict." Ibid. The State has no duty to present evidence "unless the exculpatory evidence at issue squarely refutes an element of the crime in question." Hogan, 144 N.J. at 237 (emphasis omitted). "Disclosure of all exculpatory evidence follows later—after indictment and well in advance of trial." Hyppolite, 236 N.J. at 165-166 (citing R. 3:13-3(b)(1)).

"The second requirement, that the evidence in question be 'clearly exculpatory,' requires an evaluation of the quality and reliability of the evidence." Hogan, 144 N.J. at 237. Courts must examine "[t]he exculpatory value of the evidence . . . in the context of the nature and source of the evidence, and the strength of the State's case." Majewski, 450 N.J. Super. at 367 (quoting Hogan, 144 N.J. at 237). Indeed, "only in the exceptional case will a

13

prosecutor's failure to present exculpatory evidence to a grand jury constitute grounds for challenging an indictment." State v. Saavedra, 222 N.J. 39, 63 (2015) (quoting Hogan, 144 N.J. at 239). "Credibility determinations and resolution of factual disputes are resolved almost exclusively for the petit jury." Hogan, 144 N.J. at 235.

We begin by noting that it is undisputed Luery advised Akel that defendant was driving his vehicle at the time of the accident, and Luery acknowledged defendant should not have been driving due to a suspended driver's license. Luery did not revise his statement to police until approximately four months later. The court correctly recognized that limited circumstances exist for dismissal of a grand jury indictment, stating, "The grand jury's purpose is to determine whether the State has established a prima facie case that a crime has been committed and the accused has committed it." The court explained that defendant failed to meet her heavy burden of demonstrating that Luery's statement directly negated defendant's guilt and was clearly exculpatory.

The court's reasoning that Luery's "[c]onflicting eyewitness testimony" was not "clearly exculpatory because it . . . require[d] an assessment by the grand jurors of the credibility of the various witnesses" is substantiated by the record. While Luery's recanting statement was evidential regarding an element of the

14

offense, the court found, after its detailed review of the quality and reliability of the evidence, that the State was not required to present the conflicting information because it was not clearly exculpatory. The court also found Luery being issued a summons for driving under the influence was not clearly exculpatory, as it was "not inconsistent with the facts." The court elucidated that Luery admitted to allowing defendant to drive his vehicle, and N.J.S.A. 39:4-50(a) is violated if an individual "permits another person" to operate the individual's vehicle under the influence. We conclude the record supports the court's findings based on its detailed review of the quality and reliability of the evidence. Thus, we discern no abuse of discretion in the court's order denying dismissal of the indictment.

Moreover, we note the petit jury considered defendant's and Luery's testimony that he drove the vehicle but still found defendant guilty beyond a reasonable doubt. "[W]hen a petit jury finds a defendant guilty, errors before a grand jury are deemed harmless." State v. Carlton, 480 N.J. Super. 311, 341 (App. Div. 2024). "[A] guilty verdict is universally considered to render error in the grand jury process harmless." Ibid. (quoting State v. Simon, 421 N.J. Super. 547, 551 (App. Div. 2011)). Even assuming there were errors in the grand jury proceedings, the errors are typically cured by a petit jury's guilty

15

verdict. State v. Cook, 330 N.J. Super. 395, 411 (App. Div. 2000) (finding a guilty verdict renders harmless any failure to present exculpatory evidence to the grand jury); State v. Laws, 262 N.J. Super. 551, 563 (App. Div. 1993) (finding the slight chance that the grand jury was uninformed as to the law "was rendered moot by defendant's subsequent trial and convictions"). While we find no error in the State's nondisclosure of Luery's recanting statement to the grand jury, we nevertheless observe that the petit jury's verdict cured the alleged presentment deficiency.

III.

We next address defendant's claim that the court erred in denying her motion to suppress statements that she made to the officers regarding the operation of Luery's Jeep because her Miranda rights were violated. Defendant contends reversal is mandated because the court erroneously determined she was not in custody.

Well-settled principles guide our review. When the trial court holds an evidentiary hearing on a motion to suppress evidence, we are bound to uphold the court's factual findings if they "are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). "In the typical scenario of a hearing with live

16

testimony, appellate courts defer to the trial court's factual findings because the trial court has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting Elders, 192 N.J. at 244). Factual findings will not be disturbed on appeal unless they are "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Gartrell, 256 N.J. 241, 250 (2024) (quoting Elders, 192 N.J. at 244). However, legal conclusions drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

"The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this [S]tate's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." State v. Bullock, 253 N.J. 512, 532 (2023) (quoting State v. Nyhammer, 197 N.J. 383, 399 (2009)). "The administration of Miranda warnings ensures that a defendant's right against self-incrimination is protected in the inherently coercive atmosphere of custodial interrogation." State v. A.M., 237 N.J. 384, 397 (2019). This right exists to combat the inherent pressures of custodial interrogation, "which work to undermine the individual's will to resist and to compel [an individual subject to custodial interrogation] to speak where he would not otherwise do so freely." State v. Carrion, 249 N.J. 253, 275 (2021)

17

(alteration in original) (quoting Miranda, 384 U.S. at 467). We apply a "totality of the circumstances" analysis in considering whether a defendant's statement was "the product of an essentially free and unconstrained choice" or whether "the defendant's will [was] overborne and [their] capacity for self-determination critically impaired." State v. Dorff, 468 N.J. Super. 633, 644 (App. Div. 2021) (first alteration in original) (quoting State v. P.Z., 152 N.J. 86, 113 (1997)). Incriminating statements elicited during a custodial interrogation may not be admitted into evidence unless defendants have been advised of their constitutional rights. Miranda, 384 U.S. at 492; State v. Hubbard, 222 N.J. 249, 265 (2015).

Whether a suspect is in custody is an objective determination based on "how a reasonable [person] in the suspect's position would have understood his [or her] situation." State v. Carlucci, 217 N.J. 129, 144 (2014) (first alteration in original) (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). An investigatory stop, also known as a Terry[5] stop, is characterized by a detention in which the person approached by a police officer would not reasonably feel free to leave, even though the encounter falls short of a formal arrest. See State

---

[5] Terry v. Ohio, 392 U.S. 1 (1968).

v. Stovall, 170 N.J. 346, 355-57 (2002); see also Terry, 392 U.S. at 19. Reasonable suspicion "requires 'some minimal level of objective justification for making the stop.'" State v. Amelio, 197 N.J. 207, 211-12 (2008) (quoting State v. Nishina, 175 N.J. 502, 511 (2003)) (internal quotation marks omitted). "If, during the course of the stop or as a result of the reasonable inquiries initiated by the officer, the circumstances" create reasonable, articulable suspicion that the motorist is involved in criminal or unlawful activity unrelated to the initial stop, the "officer may broaden [the] inquiry" of the detention. State v. Nelson, 237 N.J. 540, 552 (2019) (alteration in original) (quoting State v. Dickey, 152 N.J. 468, 479-80 (1998)).

However, "[i]f the questioning is simply part of an investigation and is not targeted at the individual because she or he is a suspect, the rights provided by Miranda are not implicated." Hubbard, 222 N.J. at 266 (alteration in original) (quoting State v. Timmendequas, 161 N.J. 515, 614–15 (1999)). "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" does not require Miranda warnings. Miranda, 384 U.S. at 477. "It is obvious that an inquiry by an officer upon his arrival at the scene of an accident as to who was operating the involved

vehicles is not custodial interrogation." State v. Nemesh, 228 N.J. Super. 597, 607 (App. Div. 1988).

Defendant maintains that she was in police custody while the officers questioned her about the accident because she was deprived of the ability to leave. She argues that "[w]ithout knowing her [Miranda] rights, she could not knowingly, voluntarily, and intelligently waive them, rendering [her] statements . . . inadmissible." The court copiously considered the "time, place and duration of detention, the physical surroundings, the nature and degree of the pressure applied to detained individual, the language used by the officer and objective indications." The court correctly found "Miranda warnings are not necessary when the police arrive on the scene of an accident and inquire about the identity of a driver."

The court credited the testimony of Porter and Akel in finding defendant was questioned because there was an accident investigation. The officers spoke with defendant for approximately fifteen minutes near the Jeep, which was immobile with a flat tire. The officers did not restrain her when they asked her questions about the accident, did not tell her that she had to remain at the scene, and allowed her to walk around and pace. Further, she never asked to leave. We are unpersuaded by defendant's argument that the officers' questioning of

20

her in the parking lot constituted a custodial interrogation requiring <u>Miranda</u> warnings.

Providing the court deference to its factual findings, the record amply supports the court's conclusion that "[t]he totality of the circumstances suggest[ed] this was not a custodial interrogation, but rather routine questioning during a traffic stop and therefore, <u>Miranda</u> was not required" and denial of defendant's motion to suppress was appropriate. <u>See</u> <u>State v. Smith</u>, 374 N.J. Super. 425, 435 (App. Div. 2005); <u>see also</u> <u>State v. Hickman</u>, 335 N.J. Super. 623, 631 (App. Div. 2000) ("Roadside questioning of a motorist is not transformed into 'custodial interrogation' that must be preceded by <u>Miranda</u> warnings simply because a police officer's questioning is accusatory in nature or designed to elicit incriminating evidence."). The court correctly applied the facts to the law in determining the officers were not required to give defendant <u>Miranda</u> warnings until she was arrested for refusing to perform the field sobriety tests. Therefore, we discern no basis to disturb the court's denial of defendant's motion to suppress the statements she made to the officers before her arrest.

IV.

Finally, we address defendant's argument that her sentence should be vacated as improper and excessive and the matter remanded for resentencing. Defendant specifically contends her "sentence is premised upon legal errors" because the judge found aggravating factor nine, the need to deter, which was "already part and parcel of the fourth-degree crime of which defendant was convicted." She further argues the judge gave too little weight to mitigating factor seven. We are again unpersuaded.

Applying an abuse of discretion standard, we maintain a limited scope of review when considering sentencing determinations on appeal. See State v. Torres, 246 N.J. 246, 272 (2021). We do "not second-guess the sentencing court" and defer to the sentencing court's factual findings. State v. Case, 220 N.J. 49, 65 (2014). A sentence, therefore, must be affirmed "unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record[]'[;] or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364−65 (1984)).

In imposing a sentence, the court must make individualized assessments based on the facts of each case and the aggravating and mitigating sentencing factors. See State v. Jaffe, 220 N.J. 114, 121-22 (2014). The judge must "state reasons for imposing [a] . . . sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting [the] sentence." R. 3:21-4(h); see also N.J.S.A. 2C:43-2(e) (requiring sentencing court to "state on the record the reasons for imposing the sentence . . . and the factual basis supporting its findings of particular aggravating or mitigating factors affecting [the] sentence"). A "court must qualitatively assess" the factors it finds and assign each an "appropriate weight." State v. McFarlane, 224 N.J. 458, 466 (2016) (emphasis omitted) (quoting Case, 220 N.J. at 65). Our case law does "not require . . . that the trial court explicitly reject each and every mitigating factor argued by a defendant," particularly when "we can readily deduce from the sentencing transcript" its reasoning. State v. Bieniek, 200 N.J. 601, 609 (2010).

In the present matter, the judge provided adequate reasons for its findings of aggravating and mitigating factors. The judge "plac[ed] some weight on aggravating factor . . . [nine]," stating that "laws, orders are meant to be obeyed." It had delineated defendant's history by year in its findings and noted she had

23

"[s]ix contacts with municipal court. Six contacts [that] end[ed] in either an ordinance or some amount of disorderly conduct." Defendant acknowledged her multiple municipal convictions.

In consideration of aggravating factor nine, "[d]emands for deterrence are strengthened in direct proportion to the gravity and harmfulness of the offense." State v. Fuentes, 217 N.J. 57, 79 (2014) (quoting In re C.A.H., 89 N.J. 326, 337 (1982)). A sentencing court's finding of aggravating factor nine requires a "'qualitative assessment' of the risk of recidivism" and "involve[s] determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history." Id. at 78 (alteration in original) (quoting State v. Thomas, 188 N.J. 137, 153 (2006)). In the present matter, the judge found defendant did not "obey the law" and "clearly . . . [had] some disrespect" for the law after finding defendant had a refusal charge in 2005 in addition to the two prior DUI's. We discern no error in the judge's application of aggravating factor nine.

The judge was also clearly convinced the aggravating factors outweighed the mitigating factors. We observe that after it found mitigating factors seven and ten, the judge noted that factor seven merely applied because defendant had no indictable convictions, but it was "not thoroughly convinced" as to the weight

24

the factor should be given "because of the sheer number of contacts in municipal court convictions . . . she ha[d]." Although a court does not have "'discretion' to refuse to consider a mitigating factor that is supported by the record," the court may "accord[] such weight as the judge determines is appropriate." State v. Dalziel, 182 N.J. 494, 504-05 (2005).

Relevantly, the judge granted defense counsel's requested sentence. Defense counsel argued she was amenable to a longer period of probation because the facts militated against a sentence greater than the minimum period of county jail time. We observe, "N.J.S.A. 2C:40-26 was enacted to 'create[] criminal penalties for persons whose driver's licenses are suspended for certain drunk driving offenses and who, while under suspension for those offenses, unlawfully operate a motor vehicle.'" State v. Rodriguez, 238 N.J. 105, 115 (2019) (alteration in original) (quoting S. Law and Public Safety and Veterans' Affairs Comm. Statement to S. 2939 (Nov. 23, 2009)). A conviction for fourth-degree operating a motor vehicle during a period of license suspension requires the imposition of "a fixed minimum sentence of not less than 180 days during which the defendant shall not be eligible for parole." N.J.S.A. 2C:40-26(c). The Supreme Court has recognized that "no discretion is afforded to the sentencing judge" regarding the imposition of the 180-day minimum sentence. Rodriguez,

238 N.J. at 117. N.J.S.A. 2C:43-2(b)(2) authorizes the judge's imposed sentence, and the sentence complies with N.J.S.A. 2C:40-26's requirements. Therefore, the judge appropriately imposed a commensurate sentence with defense counsel's requested "significant period of probation on top of 180 days" county jail time. For these reasons, we conclude the judge imposed a legal sentence.

To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

26